## L. HOLLIDAY AND OTHERS V. R. J. WHITE AND ANOTHER.

1. An advancement is a payment, or an appropriation of money or property, or a settlement of real estate, made by a parent to or for a child, in advance or anticipation of the distributive share to which such child would be entitled after the death of the parent. and with a view to a portion or settlement in life; or, in other words, it is a giving, in whole or in part, of what it is supposed a child may be entitled to after the death of the parent, or the party who makes the advancement.

2. A *post nuptial* advancement may be made to the wife.

3. In consideration of natural love and affection, and for the purpose of making a settlement " by way of advancement" on his wife and five children, S., in January, 1861, made a conveyance to them of certain lands, but reserving to himself the control and management of the property, and limiting his wife's interest to her life, with remainder in fee to the children. This conveyance was duly acknowledged and immediately recorded. Shortly afterwards, one of the children died intes-

tate and without wife or issue. Subsequently, and in July, 1863, S. and his wife, for the consideration of twelve thousand dollars, made conveyance of the land in fee and with general warranty of title, to W., and delivered possession to him. The surviving children now sue S. and his wife, and also W. and his tenant, for such portions of the land as they, the plaintiffs, are entitled to under the conveyance of January, 1861, and for partition thereof, and for mesne profits, etc. It is contended for the defendants that the conveyance of 1861 is testamentary in its character by reason of the reservation therein to S., the grantor; and that if such be not the case, yet during his life the plaintiffs have no right of action.   But *held*, that the conveyance of 1861 is not of a testamentary character, but is a deed *inter vivos*, and took effect presently upon its acknowledgment and registration; that the only interests which passed to W. by the deed of 1863 were the life interest in one-sixth of the land granted to the wife of S. by his deed of 1861, and also the one-sixth interest granted by the same deed to the child since deceased, which on his death vested by inheritance in his parents, S. and wife, and by their deed of 1863 passed to W.—and that the plaintiffs are entitled to partition and to their respective portions of of the mesne profits.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

The deed out of which this controversy arose is as follows :

" THE STATE OF TEXAS, COUNTY OF HARRISON.—Know all men by these presents, that, I, Albert G. Scogin, of the county of Harrison and State of Texas, for and in consideration of the natural love and affection which I have and bear to my wife, Sarah M. Scogin, and my children, William B. Scogin, Sarah D. Scogin, Susan D. Scogin, Edward Scogin and Garlington Scogin, and being desirous of settling upon my said wife and children the certain property and in the manner hereinafter mentioned, by way of advancement, and for the further consideration of one dollar to me in hand paid, the receipt whereof I hereby acknowledge, have given, granted and conveyed, and by these presents do give, grant and convey, unto my said wife, Sarah M. Scogin, and to my children, William B. Scogin, Sarah D. Scogin,

Susan D. Scogin, Edward Scogin and Garlington Scogin, the following named negroes and tract of land: (Here follows the description of some twenty negroes and two tracts of land, after which the deed proceeds—viz.:) and at the death of my said wife, Sarah M. Scogin, her interest in the land and negroes hereby conveyed shall descend and go to my said children, the interest conveyed to my said wife being intended only for and during the term of her life; and I hereby retain and reserve to myself the right to manage and control said land and negroes hereby conveyed, whereof I hereto affix my signature this the 11th day of January, A. D. 1861.

"A. G. SCOGIN.

"Attest:

"Gil McKay.

"John M. Taylor."

The plaintiffs and appellants were the four surviving children, grantees in this deed, together with Holliday and Evans, who since its execution had married the female grantees. One of the grantees, William B. Scogin, died unmarried and intestate shortly after the making of this deed, and before July, 1863, when A. G. Scogin and his wife conveyed the land to White.

It was alleged in the petition of the plaintiffs, and admitted by the demurrer of the defendants, that this conveyance of January 11, 1861, was acknowledged by the maker and filed for record on the day of its date, and was actually recorded some ten days thereafter.

The deed by Scogin and wife to White was made on the twenty-fourth of July, 1863, and acknowledged a paid consideration of $12,000. It was in the ordinary form of a deed with general warranty. By amendment, the plaintiffs alleged that the $12,000 paid by White were Confederate treasury notes; but this allegation, though admitted by the demurrer, is of no legal significance in the case.

xxxiii—29

The petition further stated, that about the first of January, 1866, one A. M. Burnham went into possession as the tenant of White; and he was also made a defendant, being charged with both actual and constructive notice of the title of the plaintiffs.

Mrs. Sarah M. Scogin, the wife of A. G. Scogin, was brought in as a party, but she disclaimed any interest in the suit. Scogin himself was an original defendant.

Conspiracy to defraud was charged against the defendants, and an account for mesne profits, as well as damages for waste, were demanded against them.

The opinion indicates all other material facts.

*Poag & McKay*, for the appellants.—The instrument was executed under all the forms of the law. The grantor was a person in every wise competent to convey property owned by him.

The grantees were competent to take and hold real estate.

The subject matter of the grant was real estate (so far as this action is concerned,) and by law required to be conveyed in this manner.

It was based upon a good consideration. The grantor declares for and in consideration of the natural love and affection, which he bore to his wife and children, and being desirous of settling upon them the property therein described, and by way of advancement to them and for the further consideration of one dollar etc., he granted etc. C. J. Boyle, in the case of McIntire v. Hughs, 4 Bibb., p. 187, in discussing this subject upon the point raised, says: "The relation between them of father and son, is not only alleged in the bill, but is apparent upon the face of the obligation; and that relation, though not a valuable, is deemed in law a good consideration." Under the statute of uses, the proximity of blood between father and son, is sufficient to support a convenant by the former to stand seized, etc.

And further he says, " that proximity of blood has always been a sufficient consideration to warrant the interposition of a court of equity, etc.," and further, " this doctrine does not depend for its support upon reason from analogy only, for the cases are numerous in which it has been directly decided."

In the case of Picquet v. Swan, 4 Mason's R., 451, Judge Story discussing post-nuptial settlements, declares :

" And even a voluntary settlement, without such valuable consideration to support it would be upheld, if the husband were not in debt at the time, or the settlement were not disproportionate to his means, taking into view his debts, and his situation, etc.   In short, if the settlements were *bona fide*, reasonable, and clear of any intent, actual or constructive to defraud creditors, it would be valid." (See also 4 Kent, pages 517 and 518, top pages.)   Many other authorities might be cited in support of this proposition, but we think our statute (see Paschal's Digest, Art. 4988,) is conclusive and probably the only authority which need have been cited. It declares " all bargains, sales and other conveyances whatever of land etc., etc." * * *  " as between the parties and their heirs," * * * "shall nevertheless be valid and binding," embracing every species of conveyance known to the law, whether voluntary or for a valuable consideration, and whether to filial and conjugal relations, or to a stranger—so this deed was supported by a good consideration.

Was there a delivery of the deed by the grantor ?

There may not have been an actual delivery; doubtless there was not, but it is submitted that by the provisions of the statute above cited, (P. D., Art. 4988,) the deed being executed under all the forms of law, and by the grantor " acknowledged, or proved and lodged with the clerk, to be recorded, according to the directions of this act," is equivalent to delivery, for the same statute further says : all those things concurring, as between the parties thereto, the same shall be " valid and binding."   Thus we have a

deed with all the essential elements, to pass title to the land therein described, from the grantor to the grantee. Second: Was the right, retained in said deed by the grantor, Scogin, "to manage and control said land," such a reservation as would reduce the quality of interest conveyed to said children to any estate less than one in fee, or that conveyed to the wife to any estate less than for her own life? We think not.

A reservation is a clause in a deed whereby the grantor reserves some new thing to himself issuing out of the thing granted, and not in *esse* before. (4 Kent, top page, 523.) Such, for instance, as the reservation of a rent, or of a mill site, and the right to erect a mill-dam, the use of streams, etc. (See note b, same page.) "So it is submitted that the language of the deed does not constitute a reservation at all, and if it does, it is as to the whole estate, and as large as the grant itself—and, upon the last authority cited, (4 Kent, page 523,) it is repugnant to the deed, and void, if the reservation be as large as the grant itself." Nor do the terms of the deed import an exception, for that is always "a part of the thing granted." (See same authority and page.)

What then, it may be asked, is the effect of that right retained by the terms of the deed to manage and control said land? We answer, of no effect whatever.

It does not retain to him any rights in or concerning said property, that the statutes of our State would not have vested in him as natural guardian and husband.

The life estate which the wife took in one interest of said land, was, by the provisions of Article 4641, Paschal's Digest, her separate property from the moment it vested in her, it being acquired during coverture by gift: and it being her separate property, the husband Scogin had the sole management thereof during their marriage, (see article last cited,) and it will scarcely be insisted that the terms, manage and control, import more in a legal sense than the terms used by the statute, viz: "Sole management."

He would have had the right, under our statute, to manage and control the portion of said land granted to the children, as perfectly and as fully as he could have had by the terms of said deed. Article 3884, Paschal's Digest, provides, that "In all cases not otherwise provided for by law, the father while living, and after his death the mother, if living, shall be entitled to the guardianship of their minor children, and shall have the custody of their persons, educations and estates." And without copying the proviso to said section, we deduce that said children having received this estate as a gift from their father, he was relieved of the necessity of returning an inventory and giving bond, etc. In which deduction we are fully supported by this court in the case of Byrne v. Love, 14 Tex. Reps., p. 87. And again, we submit that the provisions of the statute, giving the father the custody of this estate, conferred upon him full power to manage and control the same, and without inventory or bond. We are again fully borne out in this conclusion by Chief Justice Hemphill in case above cited, Byrne v. Love, where, in discussing this particular statute, he frequently uses the terms "manage and control."

It is conceded that by said deed of July 24, that interest which descended to the grantors, from their dead son, passed and was assured to said White; and it is further conceded, that the life estate of one interest granted to the wife by the deed of January 11, 1861, also passed and was assured to said White by the deed of July 24, 1863.

Although the deed of the twenty-fourth of July, 1863, from Scogin and wife to White, purported to pass and assure the whole of said land to White, yet it only passed the interests above conceded. See Pas. Dig., Art. 998, which provides, "that all alienations of real estate, made by any person, purporting to pass or assure a greater right or estate than such persons may lawfully pass or assure, shall operate as alienations of so much of the right and estate, in such lands, tenements or

hereditaments as such person might lawfully convey, but shall not pass or bar the residue of said right or estate purporting to be conveyed, or assured; nor shall the alienation of any particular estate, on which any remainder may depend, whether such alienation be by deed or will, so operate as to defeat, impair, or in any wise to affect such remainder."

It was urged in the court below, that although White had notice of the deed of January 11, 1861, at and before the time of his purchase, yet under the provision of said deed retaining to the grantor the right to manage and control, he had the right to sell and convey, and make his vendee title in fee simple. That proposition is fully answered by the case already cited of Byrne v. Love, 14 Texas R., 91.

In that case Wm. C. Byrne made a voluntary conveyance to his minor son, Edward Byrne, of a tract of land in Galveston—or at least paid the purchase money therefor, taking the deed in the name of his son Edward—and as the natural guardian of the son, took possession of the same, and managed and controlled the same, without inventory or bond. In 1849, W. C. Byrne, upon the eve of his departure from the State, by his deed in writing, granted the custody of his minor son Edward to one Love, and in the same deed conveyed said land to the said Love, to be used and enjoyed by him until the son attained his majority, when said land was to be reconveyed to the son.

The deed from Byrne to Love was based upon considerations deemed highly praiseworthy by the court, but in discussing the the validity of the conveyance as to the land, Chief Justice Hemphill says : ' " There is no doubt a guardian, and especially a father acting as guardian by nature, has very ample authority in the control, management, rearing and education of his children ; that he may lease their lands until his death or until they arrive at the age of majority; that he may place them for years under the superintendence and control of others, and when such act is not so in-

jurious to the infant as to require the interposition of the court, it cannot be disputed, either by the infant or by others." All this he may do in perfect consistency with his right of guardianship, and his ultimate liability for the proceeds of the minor's property. "But," continues the Chief Justice, "this is very different from an absolute transfer of his right of guardianship, and all control over the person and estate of the minor." This, as we have seen, is contrary to law, etc.

The judgment of this court in that case (see 14 Texas R., 96,) was annulling and setting aside the deed from W. C. Byrne to Love, and that the minor by his next friend recover the land with the improvements thereon, and damages and mesne profits, etc. If, then, the conveyance by Byrne to Love of the estate of the minor for the term of his minority, was adjudged invalid and of no effect, for much stronger reasons should the conveyance from Scogin and wife to White (wherein they attempt to convey in fee the whole land) be annulled and set aside, so far as it purports to convey anything more than such interests as are above conceded to them.

*W. S. Steadman*, and *Moore & Shelley*, for the appellees.— First—The demurrer should have been sustained for want of averments in matters of substance, especially in respect to their claim for damages for waste, and also for an account from appellee White as a tenant in common for rents and profits, even if they have any title to the property in controversy.

Second—The petition shows that appellants have no title, because the instrument upon which they rely is testamentary and not a deed. (See Hester v. Young, 2 Kelley, Geo. R., 31 and the cases there cited.)

Third—The reservation in the instrument under which appellants claim, authorizes Scogin, White's vendor, to sell to a *bona fide* purchaser.

Fourth—The reservation in said instrument gave Scogin the right to the use and possession of the property during his life; and until appellants were entitled to possession they had no right to rents and profits. Scogin did not retain possession as the trustee of appellants, and was not bound to account to them as such. His possession was for his own benefit.

Fifth—The instrument under which appellants claim is invalid, because it includes the homestead and yet is made by the husband without his wife's joining in it. It is also bad because it attempts to divest the wife's interest in community property by gift of the husband, under which it should remain in his possession during his life and then vest absolute title in the donees. And he thereby in effect seeks to enlarge his own estate in the property, and also to convey the wife's community estate by his will.

*Robards & Jackson*, for the appellant, in reply.—In order to make an instrument testamentary in its character, there must be words indicating the intention of the maker to convey a benefit, which was to take effect after the grantor's death, or that his death was the event that was to give effect to it; or, if the instrument is equivocal or silent, it may be proved by extrinsic circumstances to have been intended to operate as a testamentary disposition. (3 Haggard, 83.) The case in 2 Kelley, (Geo.) 31, and the cases quoted in it are the only cases sustaining the proposition that the opinion of the maker, as to its legal effect, is to have no weight in determining the character of the instrument; and in that case the words used in the instrument left no doubt that it was to take effect at the death of the donor.

In the case of Proctor v. Daines (3 Hagg, 83,) above cited, in an instrument where the words used were less conclusive than in this, that the intention of the grantor was that the fee to the land conveyed should pass immediately, the court says: "It is not entitled a will or codicil; it has no reference to any legacy, nor to

any executor, nor to the death of the party writing it; he does not use the words ' I give and bequeath;' he does not use the words ' I leave;' there are no solemn words of inception such as ' in the name of God, amen,' or any of those expressions which are usually, or frequently at least, found in testaments."

In this case there are no circumstances *dehors*, or facts alleged, which indicate that it was the intention of the donor that the fee in the land should only pass at his death.

It is a forced construction to say that the words "manage and control" conferred the right to sell and convey land already conveyed to another, in a deed placed on record strictly in accordance with law (Paschal's Digest, Arts. 4988, 4994); in which deed the donor has already used the words " given, granted and conveyed."

It is only necessary to read those sections of our laws to be convinced that the common law rules governing delivery and acceptance, and the necessity of a trustee to support an estate intended to be vested by deed from a husband and father in his wife and children, are abrogated.

The words in this instrument, " give, grant and convey," have a technical meaning which import an act of passing the fee to the land *in presenti*, whereas the words " manage and control " are never used to limit the fee or confer upon the trustee the right to sell and convey; neither do those words impart a power of revocation. So far as the fee at least is concerned, the donor is bound by his solemn acts of executing, acknowledging and lodging or delivering to the clerk his deed of conveyance, using the words " given, granted and conveyed," and the title in fee is then and there vested in the donee. The only words in this deed that have the slightest reference to the death of any person, are " at the death of my said wife * * * her interest * * * shall descend and go to my said children," he having conveyed to her only a life estate. There is not the slightest reference to the donor's

death. Counsel very adroitly endeavor to avoid the fact that the words " manage and control" reserved no greater right than the father possessed by the laws of Texas, but it is plain that their positions are not tenable, when they admit that, if the property had vested in the wife and children by immediate gift, those words would not divest the deed of its irrevocability. In the case of Mayor and City Council of Baltimore v. Williams, 6 Maryland, 235, the court say : " Deeds in their nature are not changeable when they retain no power of revocation ; when a deed conveys land in trust for such uses as are declared or set out in a will already made, neither the deed nor the will is revocable (262).

" The present deed is not one executing a power, nor does it contain a power of revocation, but is to confirm a will already made. If it must be regarded as a testamentary instrument, and therefore revocable, it is difficult to perceive what motive induced its execution. Without it the grantor was in the same situation as she was with it, under such a construction. A voluntary deed is not void as against a subsequent purchaser for value with notice."

The notice which will bind a subsequent purchaser need not be actual, but constructive notice by recording the voluntary deed under our registration laws, is sufficient. In the case of Lightfoot v. Colgin (5 Munford, Va., 42,) the court says : " I shall proceed to consider the case in reference to our own acts, whatever may have been the rule in England. The deed is said to be only testamentary, because the grantor did not dismiss himself of the property, but I think the answer is that he did dismiss himself of the whole interest in the reversion. The essential character of a testament is, that it is at all times revocable, but it will not be said that the deed in question could be revoked by the grantor. The right of the donees is not to depend on the donor's death, nor was there any trust or confidence that the donor was to have it back. The grant was not made during his last illness, nor was it

moved by the present peril of death. (76 and 77.) The possession of the donor is consistent with the deed of settlement, which is recorded." (77.)

The character of instruments that have been declared by the authorities cited by counsel for appellees, as wills, use such words as the following: The grantor " is very sick in body ;" this deed to " take effect after the payment of funeral expenses." Special directions concerning the paper " given his executors." Bonds given in connection with a will, and the " executors charged that they be executed ;" " do hereby give, after my death," etc. There are other instruments, in the form of a deed, that can be proved *aliunde*, to have been intended as a will, such as proof positive that the deceased called on an ignorant attorney to write his will, but by mistake he wrote it in the form of a deed, etc.

But there are no such words in this instrument, or proof *aliunde ;* on the contrary it admits of no other construction than that it was a donation *inter vivos per verba de presenti.*

WALKER, J.—The plaintiffs brought their action under the statute for partition, asking an account for mesne profits, and charging their co-tenant with waste. They count for title upon a deed from their ancestor, A. G. Scogin, dated January 11, 1861, to his wife, Sarah M. Scogin, and the plaintiffs, and their co-grantee, William B. Scogin, who has, since the date of the conveyance, died intestate, without surviving wife or heirs of his body.

After the execution of the deed by Scogin to his wife and children, on the twenty-fourth day of July, 1863, A. G. Scogin and his wife, Sarah M. Scogin, deeded the land in controversy to the appellee, Richard J. White.

There is no controversy about the due execution and record of both the deeds. Scogin put his deed of January 11, 1861, on record, and this must be held to be a good constructive delivery, with-

out which it could not take effect, either as a deed *inter vivos per verba in presenti*, or as a *donatio causa mortis*. (8 Ohio, S. R., 239.)

The defendants demurred to the plaintiffs' title, as set forth in their petition. The court sustained the demurrer, giving the judgment of *respondeat ouster*, and from this judgment the appeal is taken, and we are asked to settle the rights of the parties under the deeds of January 11, 1861, and July 24, 1863.

In Scogin's deed to his wife and children, he expressly declares that he makes the grant of land and of slaves as an advancement to them. The term advancement is an apt term, of legal science. The deed is artistically drawn, and it carries both real and personal property.

An *advancement* is a payment or appropriation of money or property, or a settlement of real estate, made by a parent to or for a child, in advance or anticipation of the distributive share to which such child would be entitled after the death of the parent, and with a view to a portion or settlement in life. (2 Blackstone Com., 517 ; Lovelace on Wills, 140.)

It is a giving, in whole or in part, of what it is supposed a child may be entitled to after the death of the parent, or the party who makes the advancement. (See C. J. Parker, 17 Mass., 536, 538.)

An advancement may be made *post nuptial* to the wife.

Upon a careful examination of the deed from Scogin to his wife and children, we are clearly of opinion that it must be construed as a deed *inter vivos*, and that it took effect to vest the fee in the appellants on delivery. The wife took a life estate in one-sixth part of the land under this deed. The children took a vested remainder. The *jus accrescendi* was to the children, so far as her share was concerned upon her death. And by the death of Wm. B. Scogin, her son, she took a sixth part in fee. These interests she has deeded to White, the appellee; and to this extent, and no more, is he interested in the land.

We are unable to apply the doctrine of executory devises to the deed of January 11, 1861, and must therefore settle the rights of the parties upon the contrary view already presented.

The appellants are entitled to partition, and to an account for mesne profits.

Each of the surviving children of A. G. Scogin will be entitled to an equal share of said estate, after first giving to the appellee, R. J. White, a life estate for Mrs. Sarah M. Scogin's life in one-sixth part of the estate, and the fee to that portion which she inherited at the death of her son, W. B. Scogin, and it will make no difference whether the father, A. G. Scogin, was living at the time of his son's death or not, as his interest, whatever it might have been, passed under his deed to White.

The judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

                                        Reversed and remanded.