Brunson *et ux. v.* Henry *et al.*

evidence in the record, and that the law and facts are with the appellees.

The judgment of the court below is affirmed.

Filed Dec. 20, 1894.

---

No. 16,849.

BRUNSON ET UX. *v.* HENRY ET AL.

MORTGAGE.—*Foreclosure.*—*Complaint by Heirs.*—*Necessary Allegations.* —A complaint by heirs to foreclose a mortgage executed to the ancestor, which fails to allege that no debts are owing by the ancestor's estate, and that no letters of administration were granted, is bad on demurrer.

PLEADING.—*Complaint by Several Persons Must Be Good as to All.*— Where an action is brought in the names of several persons the complaint must show a cause of action in favor of all, or it will be bad on demurrer for want of facts.

SAME.—*Complaint upon Written Instruments.*—*Answer Contradicting Terms of.*—A paragraph of answer to a complaint to foreclose a mortgage which seeks to contradict the plain terms and unequivocal words of the mortgage is bad on demurrer.

EVIDENCE.—*Written Instrument.*—*Contradiction by Parol.*—Parol evidence is not admissible to annul or substantially vary the terms of a written instrument, except on the ground of fraud or mistake.

PARTIES.—*Power of Court to Strike Out Names of.*—*Failure of Clerk to Make Minutes of.*—The court, in its discretion and for the furtherance of justice, may direct the name of any party to be added or struck out, and, if a proper judgment is rendered, the mere failure of the clerk to enter a formal minute of the action is not material.

GIFT.—*Causa Mortis.*—*Essentials of.*—It is essential to a gift *causa mortis* that it be made in expectation or contemplation of the death of the donor.

SAME.—*Revocation by Subsequent Will.*—A subsequent will, bequeathing to another what has already been given as a *causa mortis*, will not revoke the gift.

FAMILY SETTLEMENT.—*Conveyance.*—*Mortgage for Benefit of Grantor's Children.*—*Vesting of Title.*—*Revocation by Will.*—*Trust.*—Where, in the nature of a family settlement, a parent conveys to one child certain real estate, and the grantee agrees to pay to each of the

other children, at the parent's death, a certain sum, representing his interest, and executes notes and a mortgage securing them to carry out the agreement, a trust is thereby created in the grantee, and the title and control of the notes passes to and vests in the children, without power of revocation by will of the ancestor.

SAME.—*Mortgage.—Recording.—Acceptance by Beneficiaries.—Acceptance by Infants.*—The recording of the mortgage by the parent constituted a delivery to the beneficaries, and it will be presumed that the adults accepted the provisions made for their benefit, and the law puts in an acceptance for the minors.

From the Marion Superior Court.

*W. V. Rooker*, for appellants.

*W. P. Adkinson*, for appellees.

DAILEY, J.—This was an action commenced by the appellees against the appellants to foreclose a mortgage executed for the unpaid purchase-money of certain real estate therein described. It was given by the appellant, Asher C. Brunson, under the following circumstances: In 1868 Mary Ann Threldkeld, being a widow, and the owner in fee-simple of a farm in Marion county, Indiana, on which she then resided, conveyed the same to her son, Asher C. Brunson, by a deed of general warranty. When she made the conveyance her prospective heirs were Asher C. Brunson, Noah H. Brunson, Martha Erisman, Charlotte Whitesell, and the children of Jane Henry, deceased, to wit: Clay Henry, Thomas J. Henry and Virginia Henry.

At the time of this transaction the grantor was free from debt, in good health, and not enfeebled by age, and was desirous of having a full and fair settlement of all the family matters and property rights. She made these facts known to her children and grandchildren, and expressed the desire that they should enjoy the real estate at her death. This was considered and favorably received by the members of the family, who concluded that the real estate was worth $1,000.

Thereupon Asher C. Brunson made it known that he was willing to pay one thousand dollars to the children and heirs at the widow's death, he retaining his part of said purchase-money, payable as follows: To the heirs of Jane Henry the sum of $50. To his brother Noah the sum of $200. To his sisters, Martha Erisman and Charlotte Whitesell, each, the sum of $200, and to retain for his share the residue $350.

This proposition was accepted by all the parties concerned, and the widow made the deed to him pursuant thereto, he agreeing to execute a mortgage to secure the payment of such indebtedness.

It afterward developed that the grantee did not make the mortgage, as he had agreed. Upon learning this fact the widow and beneficiaries made complaint, and in 1873, compelled performance of the contract on his part, by the execution of the mortgage now in suit, which contains the following recital:

"Whereas, heretofore, to wit, on the 25th day of September, 1868, Mary Ann Threldkeld sold and conveyed by deed of that date to Asher C. Brunson the following real estate, etc." And "Whereas, said deed was made upon the following agreement and understanding to wit, said Mary Ann Threldkeld was to have and retain the use, rents and possession and control of the property conveyed for and during her natural life, for her sole use and support and, at her death, the sum of one thousand dollars (no part of which has been paid) was to be paid by said Asher C. Brunson as follows, etc." "Now, therefore, to secure the said Mary Ann Threldkeld the full use, possession and control, and rents, issues and profits thereof, etc.," "and to secure the payment of the several sums of money hereinabove mentioned to the children and grandchildren of Mary Ann Threldkeld,"

the said Asher C. Brunson hereby mortgages said property.

It thus clearly appears, from the admissions contained in this mortgage, that it was given in pursuance of an agreement made at the time the land was purchased, and constituted a family settlement and adjustment of all the property rights between the widow and those who were then the objects of her bounty.

About two years after the mortgage was duly recorded, Asher C. Brunson and his mother, without the knowledge or consent of the other beneficiaries, attempted a revocation and rescission of said mortgage, and to effectuate said purpose there was executed by Mrs. Threldkeld what purported to be her last will and testament, in which she provided that "all her just debts be paid as soon as possible" after her death, and subject to the charge of those debts the will vested in her son, Asher C. Brunson, absolutely and free from the lien of the mortgage, the farm she had conveyed him a number of years before, the terms of the will in this respect being:

"Item 2. I hereby will, devise and bequeath to my son, Asher C. Brunson, all the estate, real and personal, of which I shall be the owner, legally or equitably, at the time of my death, to be owned and held by my said son, his heirs and assigns forever, absolutely in fee simple, so far as the same shall not be required to pay my debts provided in the will."

When this will was executed the appellants, who were husband and wife, were residing upon this land enjoying its rents and profits, and the testatrix was living with them as a member of the common family. During all these transactions, and until the death of Mrs. Threldkeld, they occupied the farm described in the mortgage. Seventeen years after the making of the deed the mother died, and three years later Charlotte

Whitesell departed this life, leaving as her only heirs at law the appellees, Philip Whitesell, Mary McGehe, Victoria C. Frasier, Leuviene M. Whitesell and Charles H. Whitesell.

An examination of the record reveals the fact that in the complaint, which was assailed by a demurrer, the children of Charlotte Whitesell join as plaintiffs. But it contains no allegation, that there are no debts owing by her estate, and that no letters of administration have ever been granted thereon. Complaints of the class now under consideration are defective without such averments. *Walpole's Admr.,* v. *Bishop,* 31 Ind. 156; *Ferguson* v. *Barnes,* 58 Ind. 169; *Finnegan* v. *Finnegan,* 125 Ind. 262, and cases cited.

In other respects it is a plain statement of the facts constituting the cause of action, based on the mortgage, a copy of which is filed as an exhibit therewith.

In the absence of such allegations, the complaint does not state facts sufficient to constitute a cause of action. The presumption of law would be that Charlotte Whitesell died intestate, and the right to sue does not belong to the heirs in the first instance, but to the executor or administrator. It is well settled by this court that in an action in the names of several persons the complaint must show a cause of action in favor of all or it will be subject to demurrer for want of facts. *Lipperd* v. *Edwards,* 39 Ind. 165; *Maple* v. *Beach,* 43 Ind. 51; *Parker* v. *Small,* 58 Ind. 349; *Harris* v. *Harris,* 61 Ind. 117; *Martin, Trustee,* v. *Davis,* 82 Ind. 38; *Brumfield* v. *Drook,* 101 Ind. 190; *Brown, Exr.,* v. *Critchell,* 110 Ind. 31.

In this case the complaint, not being good as to the heirs of Mrs. Whitesell, it is for that reason bad as to all, and the demurrer thereto should have been sustained.

To this complaint, Asher C. Brunson filed six paragraphs of answer, the last being in general denial.

The fourth paragraph pleaded that in 1868, when he acquired the land by deed from his mother, there was no agreement that he should execute a mortgage to her; that five years later, when he made the mortgage, the act was voluntary on his part, and he received no consideration therefor.

To this answer a demurrer was sustained for want of sufficient facts, and the defendant reserved an exception. The other separate answers of said Asher were held good. The defendant, Julia A. Brunson, filed a separate answer in two paragraphs to the complaint.

There is no question before the court as to the first of these.

In the second paragraph of answer Mrs. Brunson alleged that at the date of the deed, in 1868, to her husband, and at the time of his mortgage, in 1873, she was, and ever since has been, and now is, a married woman, the wife of her codefendant; that when the deed was executed there was no agreement that her husband should make a mortgage, and no new consideration to her husband therefor; that she did not join in the execution of the mortgage, wherefore she demanded the protection of her rights.

A demurrer was sustained to this paragraph for want of sufficient facts, to which ruling she, at the time, excepted.

It is clear that there was no error in this ruling. It will be observed that the fourth paragraph of the separate answer of Asher, and the second paragraph of the separate answer of Julia, to the complaint to enforce the mortgage, seek to contradict its plain terms and unequivocal language, and this can not be done under the well settled rules of pleading.

To the remaining paragraphs of answer, the plaintiffs replied:

1st. General denial.

2d. Knowledge of the sale of the land in 1868 by Mrs. Threldkeld, and the terms of such sale and the acceptance thereof by the heirs before revocation.

3d. As to the children of Jane Henry and Charlotte Whitesell, they were minors when the pretended revocation was made.

4th. That Asher C. Brunson had been fully paid before the death of Mary Ann Threldkeld, for all claims set up in his answer for support, care, attention and funeral expenses of Mrs. Threldkeld; that this payment was made by his retaining to his own use the $350 which the mortgage provided he should retain out of the $1,000 mentioned therein, and further, "that Asher C. Brunson also took charge of said land several years before the death of Mrs. Threldkeld and occupied and used the same and applied the rents thereof to his own use, which were of a value more than sufficient to liquidate all the claims he has set up against her for support, attention, nursing and funeral expenses."

This paragraph also attacked the rescission of the contract and mortgage because of fraud and undue influence in its execution, and sought to have the will declared void because of the unsoundness of mind of the testatrix. Some of the plaintiffs pleaded separately, Noah replying with payment, accord and satisfaction and set-off.

Upon the trial of the cause, judgment was rendered for the plaintiffs against Asher C. Brunson in the aggregate sum of $676.70, to be received by them in the amounts specified as due to each of the parties therein named. There was a decree of foreclosure of the mortgage as one given for purchase-money against both defendants, and an order of sale of the mortgaged premises. The court overruled a motion for a new trial, and the defendants appeal.

In a very exhaustive brief, the learned counsel for the appellants complains of the action of the trial court in refusing to permit Asher C. Brunson to contradict, by verbal statements, the plain stipulations of the mortgage executed by him concerning its consideration. As before stated, it recites that it was given for the unpaid purchase-money of the real estate, and there is no pleading in the record that opens the door to such evidence. It is a familiar rule of law that parol evidence is not admissible to annul or substantially vary the terms of a written instrument, except on the ground of fraud or mistake. Had there been a plea of *non est factum*, or an answer alleging a mistake in the mortgage, with a prayer for reformation, such testimony would have been competent. *Irwin* v. *Ivers*, 7 Ind. 308; *Snyder* v. *Koons*, 20 Ind. 389; *Sourse* v. *Marshall*, 23 Ind. 194; *Cincinnati, etc., R. R. Co.* v. *Pearce*, 28 Ind. 502; *Coy* v. *Stucker*, 31 Ind. 161; *Benoit, Admr.,* v. *Schneider, Admr.*, 47 Ind. 13; *Diven* v. *Johnson*, 117 Ind. 512; *Coapstick* v. *Bosworth*, 121 Ind. 6.

By some inadvertence, the draughtsman, who prepared the complaint, included in the action the names of the husband and all the children living and dead of Jane Henry, deceased, but it developed on the trial that the husband possessed no interest in the property, and that all the children died in infancy, unmarried and without issue before the giving of the mortgage, except Clay Henry, Thomas J. Henry and Virginia Henry, and the court dropped from consideration the names of all others, and, in the decree, found specifically that they are the only children of Jane Henry now living, and as her only heirs and children are entitled to receive of the amounts of the judgment the sum of $66, as follows: Clay Henry, $22; Thomas J. Henry, $22, and Virginia Henry, $22, thus directly showing that the others named

in the complaint are dead, and that these alone are living and have an interest in the controversy.

The mere failure of the clerk to enter a formal minute of the action of the court in striking out the names of the dead ought not to defeat the meritorious claims of the survivers.   When the judgment and decree cover the whole ground these details, made in memorandum and noted on the entry docket and on the order-book of the court, are not always absolutely essential.   The rendition of a proper judgment was more important than the mere minute showing that the names of certain plaintiffs were struck out.

Section 396, R. S. 1881, Burns R. S. 1894, section 399, provides that "the court may, at any time, in its discretion,   *   *   *   for the furtherance of justice, direct the name of any party to be added or struck out;   *   *   *   *   *   when the amendment does not substantially change the claim or defense."   Section 568, R. S. 1881, Burns R. S. 1894, section 577, provides that: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves."

We think the court, in the case at bar, had power to do what it did, and the appellants are not injured thereby.   It is the theory of the appellants, who were defendants below, that the transfer of the real estate to Asher and the execution of the several notes, secured by the mortgage in question, created a gift *causa mortis* to them from Mrs. Threldkeld, subject to revocation by her, and hence that her right to control the property was unrestricted.   In this case one important element is wanting to constitute a gift *causa mortis*.   It nowhere appears that at the time of the transaction she appre-

hended death from illness, the infirmity of old age or from external or anticipated danger.

It is essential to the validity of a gift *causa mortis* that it be made in expectation or contemplation of the death of the donor.   It can only be made by a person who believes his end to be near, and who makes the gift in view of and because of his approaching death.   8 Am. & Eng. Encyc. of Law, 1346.   The subject of the gift must be delivered or the gift is not complete or valid.   Where all the requirements, as to the delivery, have been complied with, the gift is conditional and may be revoked by the donor or by operation of law.   So the recovery of the donor from the particular illness or peril which existed at the time the gift was made, and which was the cause of the gift, will of itself cause its revocation.

But if, as asserted by the appellants, the gift were *causa mortis*, we are unable to see how they could derive any benefit from the provisions of the will under which they claim.   It seems to be well settled by the courts that a subsequent will made by the donor, bequeathing to another what has already been given as a *causa mortis* will not revoke the gift.   The will only speaks from the death of the testator, and at his death the gift, which before was ambulatory like the will, became absolute and irrevocable.   *Jones* v. *Selby*, Finch's Precedents in Ch., Case 229; *Hambroke* v. *Simmons*, 4 Russell, 25; *Nicholas* v. *Adams*, 2 Whart. (Pa.) 17; *Emery* v. *Clough*, 63 New Hamp. 552; *Merchant* v. *Merchant*, 2 Bradf. (N. Y.) 432.

In this case we are of the opinion that the title and control of the notes mentioned in the contract, in suit, passed to and vested in the children and grandchildren, and in order to enable the appellees to maintain this action, it was not necessary that the contract should have been delivered to either of them.   By the recording of

the mortgage to these appellees, Mrs. Threldkeld parted with her dominion and control over the notes and mortgage, and this act constituted a delivery to the beneficiaries.

As between the parties to this transaction it was so completely executed as to effectually transfer the full title and ownership of the notes to the payees, as fully as if they had been sold for a valuable consideration. It will be presumed that the adults accepted the provisions made for them which were for their benefit, and the law puts in an acceptance for the minor beneficiaries. *Nolte* v. *Libbert, Admr.*, 34 Ind. 163; *Guard* v. *Bradley*, 7 Ind. 600; *Pruitt* v. *Pruitt*, 91 Ind. 595.

The institution of this suit is a sufficient acceptance on their part. *Copeland, Exr.*, v. *Summers*, 138 Ind. 219.

By the conveyance to Asher C. Brunson, and taking back from him obligations to pay the appellees the sums therein named, the grantor, in the deed, made him a trustee for the appellees. In contemplation of law, she left in the hands of Asher C. Brunson the amount of money to be paid to them, and thereafter he held such funds as their trustee, to be paid according to the terms of the contract. *Coppage, Exr.*, v. *Gregg*, 127 Ind. 359; *Copeland, Exr.*, v. *Summers, supra.*

The rule is elementary that a trust once created and accepted can not be altered or changed, either by the donor or trustee, without the consent of the beneficiary. If executed it can not be revoked without the consent of the *cestui que trust*.

In *Haxton* v. *McClaren*, 132 Ind. 235, it was said: "If the trust is perfectly created, the donor or seller having nothing more to do, the person seeking to enforce it having need of no further action on the part of the donor, nothing being required of the court but to give effect to

the trust, it will be carried into effect at the suit of a party interested although it was without consideration."

In this case, Mary Ann Threldkeld conveyed this real estate to her son, leaving in his hands for the use of the appellees the money for which they sue, part of the purchase-price to be paid to them at her death. There was an acceptance and the trust could not be revoked, altered or changed without their consent. As to Mrs. Threldkeld the trust was perfectly created. There was nothing more for her to do. The appellees require no further action on her part. Nothing is required of the court, except to give the trust effect. Under these circumstances, we think the title of the donor to this fund was divested at the time the contract was executed and vested in the appellees.

The transaction, in this cause, may properly be regarded in the light of an advancement to the payees.

This may be illustrated by the case of *Cerney* v. *Pawlot*, 66 Wis. 262, in which it was held where a father loaned money and took a note and mortgage payable to the daughter, that the delivery of these instruments to the father inured to the benefit of the daughter by way of advancement.

In *Holliday* v. *White*, 33 Tex. 447, the doctrine is declared that an instrument making an advancement can not be of a testamentary nature, as the title passes at once, and the donor divests himself of all property in the advancement.

In the 7th Am. & Eng. Encyc. of Law, 808, it is said: "That a family arrangement entered into without concealment or fraud on either side, is binding on the parties, though they may have been mistaken as to their legal rights."

Where an advancement is made by a parent to children, the presumption is that it was caused by the ordi-

nary promptings of affection, unless the child was the guiding mind and the parent dependent. In this case there is no charge of fraud against the donees, and the element of dependence is not involved, as the donor retained a life estate in the land adequate for her support.

Also, in Schouler's Dom. Rel., section 271, it is said: "In transactions between members of the same family, if they be such as tend to the peace and security of the family, to the avoiding family disputes and litigation, or to the preservation of family property, the principles by which such transactions must be tried are not those applicable between strangers, but such as, on the most comprehensive experience, have been found most for the interest of families."

Appellants complain of the rulings of the court upon certain paragraphs of the reply, but if the complaint were sufficient they would be good enough for the class of answers to which they responded.

There is also a criticism of the action of the court in overruling appellants' motion to retax costs of certain witnesses. The motion was supported by affidavits and resisted by counter-affidavits, and the trial judge could tell better than we can, what would be fair and just in the matter.

In view of the record presented us, we are unable to say that the trial court abused its discretion. We are persuaded that if a sufficient complaint had been on file in this case, substantial justice would have been done the parties and the fair and correct result reached. But for the error in overruling the demurrer to the complaint the cause is reversed, with directions to the trial court to sustain the demurrer thereto, and for further proceedings in accordance with this opinion.

Filed Dec. 11, 1894.