## McDowell v. North, Administrator.

[No. 2,412. Filed Dec. 15, 1899. Rehearing denied April 3, 1900.]

ACCOUNT STATED.—*Partnership.*—*Complaint.*— In an action by the administrator of a deceased partner against a surviving partner on an account stated, a complaint alleging an express promise to pay, and that the amount was due, is not bad for failing to allege that an indebtedness existed against defendant in favor of decedent. *p. 438.*

SAME.—*Complaint.*—It is not necessary to file a bill of particulars with the complaint upon an account stated. *p. 439.*

SAME. — *Complaint.*—*Partnership*—*Decedents' Estates.*—In an action by the administrator of a deceased partner against a surviving partner upon an account stated, an averment in the complaint of the death of the creditor is unnecessary. *p. 439.*

SAME.—*Complaint.*—*Partnership.*—*Decedents' Estates.*—A complaint in an action by the administrator of a deceased partner against a surviving partner, alleging that a partnership existed between decedent and defendant, which was mutually dissolved, and in the settlement

it was ascertained and agreed that defendant was indebted to decedent, upon an account stated, in a fixed sum, which defendant agreed to pay, is good as against a demurrer. *pp. 439, 440.*

EXECUTORS AND ADMINISTRATORS.—*Right to Sue.*—The right of an executor or administrator to sue cannot be questioned except by special answer under oath. *p. 441.*

PARTNERSHIP.—*Services of Partner.—Answer.*—In an action by the administrator of a deceased partner against a surviving partner, on an account stated, an answer that by the agreement of the partners each was to devote his whole time to the business of the partnership and share equally in the profits and losses, that defendant had devoted all of his time, and decedent had failed and refused to devote his time to the business of the partnership, to the damage of defendant, in an amount stated, is insufficient. *pp. 441-443.*

SAME.—*Death of Partner.—Executors and Administrators.*—Where, by an agreement upon a dissolution of partnership, one of the partners was authorized to collect the notes and accounts and apply the proceeds in a certain manner, after the decease of such partner his administrator succeeds to such right. *pp. 446, 447.*

From the Wells Circuit Court. *Affirmed.*

*A. N. Martin* and *W. H. Eichhorn,* for appellant.

*J. S. Dailey, A. Simmons* and *F. C. Dailey,* for appellee.

WILEY, C. J.—This case was transferred from the Supreme Court.

Appellee was plaintiff below, and his complaint was in three paragraphs. In the first paragraph of complaint it is averred that appellant is indebted to the estate of Jacob North, deceased, in the sum of $803.67 on an account stated between appellant and said decedent, on the 2nd of April, 1895, upon which statement a balance was found to be due from appellant of said sum, which amount he agreed to pay. It is further averred that said sum is due and unpaid.

In the second paragraph it is averred that on February 1, 1887, the decedent and appellant entered into a partnership for the purpose of operating a sawmill, and carrying on the business incident thereto; that the said decedent paid in as capital stock $5,000; that on April 2, 1895,

the decedent and appellant had a full and final account-
ing and settlement of their partnership business up to that
date; that in said settlement it was found and agreed that
appellant was indebted to decedent in the sum of $803.67;
that the debts of said firm have all been paid; that upon said
settlement being made the business of said partnership was
closed up, and was by mutual consent dissolved; that de-
mand had been made upon appellant to pay the sum so
found due, but the same was refused; that said sum is due
and remains unpaid.

In the amended third paragraph of complaint the same
facts are alleged as to the partnership between appellant
and decedent as are averred in the second paragraph. It
is then averred that the profits and losses were to be borne
and shared equally; that said partnership and business con-
tinued until April 2, 1895, when by mutual consent, the
partnership was dissolved; that the decedent agreed with
appellant to take a deed for appellant's undivided one-half
of the real estate owned by the partnership, together with
the mill and machinery, at the valuation of $1,000, all of
which, except $254, was to be applied to the liquidation of
a note of $500 held by decedent against appellant for the
unpaid purchase money for said real estate; that it was also
agreed that decedent should take the lumber and logs on
hand, at the valuation of $563.18; that said real estate was
conveyed to decedent, and that said logs and lumber were
transferred to him, in pursuance to said agreement; that
on April 2, 1895, there was a full and complete settlement
between them, in which it was agreed that the total amount
due the decedent was $2,535.68; that appellant was entitled
to a credit thereon in the sum of $914.83, being the amount
overdrawn by decedent on the partnership account; that
appellant was entitled to other credits (specifying them) in
the total sum of $1,732.01, which left a balance in favor of
and due decedent of $803.67. It is also charged that when
said settlement was made, it was agreed that the notes and

accounts of the partnership remaining unpaid should be sold, assigned, and turned over to decedent; that he should collect so much of them as were collectible, and apply the proceeds thereof, first, to any outstanding indebtedness, and that one-half of the residue should be applied as a credit on said sum of $803.67 so agreed to be due decedent; that in pursuance to said agreement all of the notes and accounts of said partnership were sold, assigned, and turned over to decedent, who, during his life, made diligent efforts to collect the same, but neither the decedent nor appellee was ever able to collect but $— thereon, and that the residue thereof has either been paid to appellant or is upon parties who were worthless and insolvent, etc. It is then averred that said sum of $803.67 is due, remains unpaid, and that demand for payment has been made. Appellant demurred to each of the paragraphs of complaint for want of sufficient facts, which was overruled, and he has assigned such ruling as error. While other questions are presented by the record, we will first dispose of the ones thus presented.

As to the first paragraph, appellant argues that there is no allegation that any matter of indebtedness ever existed between him and decedent, which was settled between them, and therefore no consideration is shown for any promise on appellant's part to pay any sum of money. This objection is not tenable. While the paragraph might have been more artistically drawn, it contains all necessary elements to make it good against a demurrer. In *Bouslog* v. *Garrett*, 39 Ind. 338, the following complaint was held good: "Nathan Garrett * * * complains of Levi Bouslog, * * * and says that on the 1st day of January, 1870, the defendant was indebted to the plaintiff in the sum of $1,007.84, for money found due from the said defendant to the plaintiff upon an account then stated between them; which said sum, together with the legal interest thereon, remains unpaid, for which he demands judgment." The court said: "We are inclined to hold that the first paragraph of the

complaint is sufficient under the code, although it is not exactly according to the approved forms in the works on pleading. It may be advisable, in such a paragraph, to allege an express promise to pay the amount ascertained to be due, and this is according to the usual forms. But we think this is impliedly included in the allegations of the paragraph in question. The law implies a promise to pay the balance found to be due." In the case we are now considering the paragraph alleged an express promise to pay, and that the amount was due. The paragraph is in harmony with the form of a complaint upon an account stated, as laid down and approved in 3 Works' Prac. p. 15. If, as said in *Bouslog* v. *Garrett, supra,* we can imply a promise to pay, we certainly can imply that there was an indebtedness existing in favor of decedent against appellant for the very suggestion of an account stated implies an indebtedness. The allegation that an account was stated between the parties, and upon such statement it was found that a certain balance was due from the defendant to the plaintiff, is a sufficient charge of a breach of contract. 1 Ency. Pl. & Pr. p. 89, note 1.

Neither is it necessary to file a bill of particulars with the complaint upon an account stated. *Salem Gravel Road Co.* v. *Pennington,* 62 Ind. 175. "An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions and promising payment." 1 Ency. Pl. & Pr. p. 87; *Zacarino* v. *Pallotti,* 49 Conn. 36. Many other authorities might be cited.

The next objection urged to this paragraph is that there is no averment of the death of the creditor. Such an averment is not necessary. *Kelley* v. *Love,* 35 Ind. 106.

Appellant says the second paragraph of complaint is bad because it does not allege that the partnership affairs with third persons had been settled, its choses in action had been collected, and its partnership property had been disposed

of; that no demand is alleged, and that a surviving partner is not liable to an action by the personal representative of the deceased partner until a demand is made for a settlement, and is refused, and that such demand must be averred. If it was the theory of this paragraph that the partnership that had existed between appellee's decedent and appellant still existed, had not been dissolved, and no settlement had been made thereof, these objections would be well taken. But this is not the theory of the second paragraph. It proceeds upon the theory that the partnership had been dissolved, a settlement of its affairs made, its debts all paid, and upon such settlement between the parties, it was found that appellant was indebted to the decedent in the sum of $803.67, which he agreed to pay. These facts are all specifically averred, and it is also averred that a demand was made. See *Anderson* v. *Ackerman*, 88 Ind. 481.

In the case of *Douthit* v. *Douthit*, 133 Ind. 26, it is said: "It is the law that one partner can not sue another to recover profits or to recover his share of partnership assets where the partnership is unsettled, although he may sue for an accounting and for the recovery of whatever may be found due upon a settlement of the partnership affairs. But this rule does not apply to all cases growing out of partnership contracts. Where there is an agreement adjusting partnership affairs, and that agreement awards one partner a specific sum, or creates a specific duty in his favor, he may maintain an action upon a breach of the duty or promise." Citing *Snyder* v. *Baber*, 74 Ind. 47; *Warring* v. *Hill*, 89 Ind. 497; *Lawrence* v. *Clark*, 9 Dana 257; *Foster* v. *Allanson*, 2 T. R. 479; *Wright* v. *Hunter*, 1 East 20; *Neil* v. *Greenleaf*, 26 Ohio St. 567; *Wells* v. *Carpenter*, 65 Ill. 447.

In the case from which we last quoted, where a special finding of facts was made, it was said: "These facts require the conclusion that there was an agreement of disso-

lution wherein were contained specific promises and stipulations creating specific duties, and there was no necessity for an accounting embracing all partnership matters, since only specific matters were in controversy.   *   *   *   Where one partner, upon dissolution, unconditionally agrees to pay a designated sum or a specified debt he is absolutely bound, and no demand is necessary to fix his liability." Citing *Anderson* v. *Ackerman*, 88 Ind. 481.   Under the averments of the second paragraph of complaint, it is shown that a partnership existed between decedent and appellant; that it was mutually dissolved; that in such settlement it was ascertained and agreed that appellant was indebted to decedent, upon an account stated, in a fixed sum; and that he agreed to pay it.   These allegations, under the authorities, make the paragraph good, and it was not error to overrule a demurrer to it.

The first objection urged to the third paragraph of complaint is that it is shown that the right of action is in Jacob North, and that it is not averred that he is dead, and that there is no allegation showing appellee's right to maintain the action.   Under the statute and the authorities, it is not necessary for an administrator or an executor to make profert of his letters, in the first instance, or to allege facts showing his right to maintain the action in which he sued. Where an administrator or an executor sues, the court will presume that he has been duly and legally appointed, and his right so to sue can not be questioned, except by special answer under oath.   §§2446, 2447 Burns 1894; *Nolte* v. *Libbert*, 34 Ind. 163; *Kelley* v. *Love, supra; Wyant* v. *Wyant*, 38 Ind. 48.

Other objections are made to this paragraph of complaint, but we do not deem them of sufficient importance to require specific mention.   The court did not err in overruling the demurrer to it.

Appellant next discusses the sustaining of appellee's demurrer to his third paragraph of answer to the amended

third paragraph of complaint. This paragraph of answer avers that all matters charged in the third paragraph of the amended complaint grew out of a partnership between appellant and appellee's decedent. It sets out the terms of the agreement between them, and pleads a contract or agreement by the terms of which they were each to devote his whole time to the business of the partnership; that each was to share equally in profits and losses; that appellant had devoted all his time to said business; that his services were worth $10 per week from February 1, 1887 to the time of dissolution; that decedent had failed and refused to devote his time to the business of the partnership, to the damage of the partnership business and to appellant in the sum of $5,000; and that no settlement of the partnership business had ever been made. The prayer of this paragraph of answer was that an accounting be had, including an allowance for appellant's services in the sum of $5,000. Both from the answer itself, and the argument of counsel, we are inclined to the opinion that it proceeds upon the theory that both appellant and decedent agreed in their contract of partnership to devote their entire time to the business; that appellant did so, and decedent did not, and that appellant's services were worth $5,000, for which he should be allowed. We can not believe that the answer is good upon such theory. It is a rule of law that where the partnership agreement requires a partner to devote his time to the partnership business, and he wilfully abandons it, throwing its burdens upon his copartner, he may be charged with the value of the services he should have rendered. It is also the law that, if a partner fails so to devote his time to the business, because of incapacity on account of sickness, it is not sufficient to create a breach of contract. 17 Am. & Eng. Ency. of Law pp. 1224, 1225, and authorities there cited. There is no averment in this paragraph of answer that decedent wilfully absented himself from the business, or that his absence was not caused by sickness. It is an established

McDowell *v.* North, Adm.

principle applicable to the business of partnerships that it is the duty of a partner to devote his services and time to the business of the partnership, without compensation, except such as arises from the profits, unless there is some stipulation to the contrary. *McBride* v. *Stradley*, 103 Ind. 465; *Lee* v. *Davis*, 70 Ind. 464.

In notes to *Winchester* v. *Glazier*, 152 Mass. 316, 25 N. E. 728, 9 L. R. A. pp. 424, 425, the rule is thus stated. "In the case of joint partners, the general rule is that one is not entitled to charge against another a compensation for his more valuable or unequal services bestowed on the common concern, without a special agreement."

"There is no compensation for inequality of services rendered before the dissolution."

"A partner must serve without any reward or compensation, unless there is an express stipulation for compensation."

"The law never undertakes to settle between partners their various and unequal services bestowed in the joint business. This must be left to contract."

Many authorities are cited in support of these propositions, to which we refer without comment. Our conclusion is, upon these authorities, that that part of the answer which seeks a recovery for appellant's services in attending to the business of the partnership does not take the answer out of the general rule as stated, and that the averments are wholly insufficient to bring it within the other rule, that the law will imply an agreement that a partner shall have a compensation for his services aside from his interest in the profits or business. The facts averred do not show any circumstances from which the law could imply such agreement. See *Lee* v. *Davis, supra; Lassiter* v. *Jackman*, 88 Ind. 118; *McBride* v. *Stradley, supra.*

All the other facts stated in the third paragraph of answer constitute merely an argumentative denial, and it is the well settled rule in this State that it is not reversible error to

sustain a demurrer to a pleading where the same facts are provable under another paragraph.  *Pierce* v. *Pierce,* 17 Ind. App. 107.

Appellant pleaded the general denial.  Other paragraphs of answer need not be noticed, as no question for decision is presented, arising under them.  The case was tried by the court, and a special finding of facts was made, and conclusions of law were stated thereon.  By its conclusions of law, the court stated that appellee was entitled to recover a fixed amount.  The appellant excepted to the conclusions of law, and one of the errors assigned is, that the court erred in its conclusions of law.  A brief reference to the facts found is necessary to a determination of this question.  It was found that a partnership was formed between appellant and decedent January 29, 1887, for the purpose of buying timber, manufacturing and selling lumber; that the profits and losses were to be borne and shared equally; that appellant was to superintend the mill and mill-yard, and keep the books; that the decedent was to buy the timber, have supervision of the outside business, and manage the financial affairs of the partnership; that they continued said business as partners until April 2, 1895; that appellant devoted his entire time to the active management of the sawmill and to the manufacture and sale of lumber, etc., and that decedent devoted such portion of his time to the business as was necessary; that said business was conducted until June 15, 1893, when the mill was closed, leaving on hand a quantity of logs, and lumber, and mill property; that there were also on hands a large amount of uncollected notes and accounts; that on April 2, 1895, there were logs and timber on hands belonging to the firm of the value of $1,126.36; that on April 2, 1895, appellant and decedent entered into an agreement, whereby appellant sold and agreed to convey to decedent his interest in the mill property for $1,000; that such conveyance was duly made; that on said day he also sold and transferred to decedent his interest in the

lumber and logs on hand for $563.18; that there was then due said firm from divers persons upon accounts, as shown by the books, $1,490, and promissory notes aggregating $318, and a judgment for $58.35; that, of the amount of accounts and notes specified, $409.35 was valid and collectible, and that the balance was worthless and uncollectible; that decedent collected as assets of said firm, and was charged therewith, $90,582.74; that he had paid out $83,-818.09; that appellant had collected $5,778.83, and had paid out on account of the firm $843.45; that on April 2, 1895, appellant was indebted to decedent in the sum of $2,535.61; that on said day said partnership was dissolved by mutual consent; that on said day appellant was indebted to decedent upon a note in the sum of $746, which sum was applied upon the purchase price of the property then conveyed by appellant to decedent, which left due to appellant $254; that on August 2, 1895, appellant made an inventory of all claims due said firm, had the same appraised, filed the same with the clerk of the Wells Circuit Court, and, as surviving partner of said firm, executed his bond, and entered upon his duties as surviving partner in the settlement of the partnership business; that on April 2, 1895, appellant and decedent settled up all matters relating to the individual indebtedness of appellant to decedent, and all of the partnership affairs; that in said settlement it was mutually agreed that appellant owed decedent $2,535.61; that decedent's indebtedness to said firm was $6,764.65; that appellant's indebtedness to said firm was $4,934.98; that decedent's indebtedness to said firm exceeded appellant's in the sum of $1,829.87; that one-half thereof, viz., $914.84, was due appellant; that it was also then agreed that said sum of $914.84, $254,—balance due on the sale of the mill, and $563.18,—being appellant's share of the value of the lumber, etc., should all be credited on appellant's indebtedness to decedent of $2,535.61, and that it was further agreed that after deducting all of said credits there was a

balance due decedent of $803.67; that at said settlement it was agreed that all notes and accounts due said firm should be assigned and transferred to decedent and that the books of the partnership should be left in his custody; that said notes and accounts were to be collected by decedent, and, as collected, appellant's portion thereof was to be applied in payment of said sum of $803.67; that in pursuance to said agreement said notes, accounts, and books were turned over to decedent, who was in possession of the same up to the time of his death; that they remained in the possession of his family until the administrator took possession of them. On June 1, 1895, decedent died intestate. Appellee qualified as his administrator, is such administrator, and received said notes, accounts, and books, as such, from decedent's family.

Upon these facts the court stated its conclusions of law as follows: "That plaintiff ought to recover of the defendant $538.90, and that his title to the uncollected notes and accounts heretofore held by the plaintiff and defendant ought to be confirmed, subject to the condition that, if more than $409.35 be collected on said notes and accounts, onehalf of such excess ought to be credited upon the sum the plaintiff recovers herein, or paid over to the defendant if he shall have paid the amount of recovery, and this condition should operate until the final settlement of the estate of said Jacob North."

Appellant urges that by the conclusions of law his rights in the uncollected accounts and notes of the partnership are taken from him, and that the court arbitrarily placed a value of $409.35 upon them, while upon their face they aggregated a much larger amount. By the finding of the court, these accounts and notes belonged to appellant and decedent in equal shares; that by an agreement between them, they were turned over to appellee to collect, and appellant's share, when collected, was to be applied, so far as it would go, upon his indebtedness to decedent. Under the

facts found these notes, accounts and books of the firm were to be left in possession of decedent, and he was to make collection thereof. If we accept the findings as true,—and we must for the purpose of disposing of the question now under consideration,—we must hold that there was an agreement by which the decedent was authorized to proceed to the collection of the notes and accounts, and, apply the proceeds as indicated. If he had this authority, then he had a right to their possession, and his administrator would succeed to such right.

Complaint is made that the court arbitrarily fixed the value of the uncollected accounts and notes at much less than their actual value, and that appellant is thus barred from sharing in his interest in future collections, if they should be made. There is evidence in the record from which the court could have fixed the amount of the collectible accounts and notes at the sum found. Whether that amount is numerically correct, we can not say, but we can not go back of the findings when there is evidence upon which the court acted. Appellant is mistaken, it seems to us, when he says his rights in future collections are barred by the conclusions of law. On the contrary, they are properly protected by the court's conclusions of law, in that it is stated that any sums thus collected shall operate as a credit upon the amount found due, and, if the amount is paid by appellant, his share of such collections shall be paid over to him, and such condition shall operate until a final settlement of the decedent's estate. Upon the happening of that event, while the question is not before us, we have no doubt but what the court below can and will make such disposition of the matter as fully to protect his rights. In fact, we think the conclusions of law are more favorable to appellant than the facts warrant. The court found that on a settlement between the parties, it was agreed that there was due the decedent $803.67. After giving him all credits to which he was entitled, the court deducted from the remainder the

one-half of the valid and collectible accounts and notes, amounting to $204.67, and rendered judgment for the residue. Under the facts found, appellant was only to have credit as the money was collected, and by the conclusions of law, he got credit for his one-half interest in uncollected notes and accounts. He gets this credit whether they are collected or not.

Appellant further insists that the right to collect uncollected accounts and notes rests in him as surviving partner. Ordinarily this is true, but the facts found show that the partnership was dissolved, the partnership affairs settled outside of the collection of the notes and accounts, and that right was delegated to decedent by special contract. The mere suggestion that if the decedent were living he would, under the agreement, have a right to proceed to their collection and apply the proceeds as agreed upon, is sufficient to show that appellant's position is not defensible. The court did not err in its conclusions of law.

Appellant's ninth specification of error challenges the action of the court in overruling his motion for a new trial. The motion for a new trial was based upon forty reasons. From the second to the thirteenth reasons, inclusive, and the twenty-first, the sufficiency of the evidence to sustain the finding of facts generally, and certain of the findings specially, is questioned. A detailed discussion of these several questions would require much time and space. While the evidence is voluminous, we have examined it as to the points raised, and are clearly satisfied that there is evidence in the record upon which the court could rest its several findings. Appellant specially complains that the evidence does not warrant the court in finding that there were only $409.35 in value of valid and collectible accounts. From our view of the facts established by the evidence, the court would have been warranted in finding a lesser amount; but, in any event, the finding can not possibly harm appellant, for the trial court carefully protected him in all his rights

in the notes by its conclusions of law and judgment. It is also urged that there was no evidence to support the finding that appellant was individually indebted to decedent April 1, 1895, in the sum of $2,535.61, as found in finding eight. There is an abundance of evidence upon which to base this finding. The evidence upon this point is plain and convincing, and it is shown that it was for money furnished appellant by decedent out of his private means.

Appellant's fifteenth reason for a new trial is as follows: "Because the court erred in finding that the defendant was not entitled to any compensation for his services as alleged in the fourth paragraph of his answer." And the sixteenth reason is as follows: "Because the court erred in finding against the defendant as to the material allegations made in his fourth paragraph of answer." If these reasons present any question for consideration, they may be properly considered together. It may be well to say in this connection that appellant's fourth paragraph of answer counted upon an express contract by which he was to be paid $10 per week for his services in conducting the partnership business. We are inclined to the view, however, that these were not proper reasons for a new trial. The court did not make any specific finding that appellant was not entitled to any compensation, or any specific finding against him on his fourth paragraph of answer. But, waiving the question as to any technical objections, the court, under the evidence, was warranted in finding against him on his fourth paragraph of answer. Appellant produced what purported to be a written agreement between him and decedent, of the date of January 29, 1887, when it is found the partnership was formed. This agreement fixes the price of certain classes of logs belonging to decedent, then in the mill-yard, which became partnership property, and provided that the interest on the individual half should be eight per cent. till paid. The agreement closed with the following:

"Thomas McDowell to have $10 per week." The evidence shows that this agreement is in the handwriting of appellant. It commences: "An agreement between Jacob North, the first part, T. J. McDowell, of the second part." It is not contended that this was a contract embracing the terms of the partnership, for such contract was oral, and why it should contain the stipulation that appellant should have $10 per week is shrouded in mystery, and clothed with suspicion and doubt. The signature of appellant appears first, and there is sufficient evidence in the record from which the court could have found that the part of the agreement providing for his compensation, which was all crowded into one line, was placed there by him long after its execution, and that when it was signed by appellant, he left the line above his signature for the signature of the decedent, but that decedent did in fact affix his signature below appellant's. Appellee contends that the line above the signatures was subsequently filled in by appellant. There is much evidence to support this contention. It is shown that the body of the instrument and the signatures are different from the last line, in that they are paler and more aged, and written with the same ink. It is also shown by competent evidence that the last line of the agreement was written with a different ink, at a much more recent date, and the words are crowded and much closer together. Another fact which the court was authorized to, and doubtless did, consider, is that while the agreement was made when the partnership was formed, and provided on its face that appellant should receive $10 per week, yet during all the years of the partnership, he did not make any demand or claim for such compensation, nor did he receive it. The evidence and the circumstances to which we have just alluded were sufficient to cast such doubt and suspicion upon the question of appellant's right to special compensation that the court was fully justified in arriving at the conclusion reached.

Reasons twenty-two to forty, inclusive, for a new trial,

question the admission and rejection of certain specified evidence. We can not believe that any useful purpose would be subserved by extending this opinion to an unreasonable length in pointing out and discussing these several reasons. The learned counsel for appellant have argued them with much force and at great length. We have taken up the line of their argument and carefully examined every point discussed, and have reached the conclusion that there is no reversible error in the court's action in admitting and rejecting the evidence of which appellant complains. The judgment is affirmed.