## The Michigan Trust Company, Executor, v. Probasco, Administrator.

[No. 4,024.   Filed March 13, 1902.   Rehearing denied May 20, 1902.]

Executors and Administrators. — *Omitted Assets.* — *Administrator De Bonis Non.*—Under §2395 Burns 1901, the court may appoint an administrator *de bonis non* where it appears that assets of the estate have been omitted, for the purpose of administering such omitted assets, and in such case the former settlement continues to be a final adjudication as to all matters except the omitted and unadministered assets. *pp. 112, 113.*

Michigan Trust Co. v. Probasco.

EXECUTORS AND ADMINISTRATORS.—*Administrator De Bonis Non.—Appointment.—Presumptions.*—Every presumption is in favor of the validity of the appointment of an administrator *de bonis non*, and such appointment can not be attacked in a collateral proceeding. *p. 113.*

SAME.—*Administrator De Bonis Non.—Suits by.—Authority.—Plea in Abatement.*—In a suit by an administrator *de bonis non* it is only necessary to aver that he is administrator, and his right to sue can not be questioned except by plea in abatement. *p. 113.*

COURTS.—*Jurisdiction.—Situs of Property.*—An action may be maintained at the domicil of a building and loan association to prevent the association from paying the amount of a certificate of stock to one claiming ownership, and to determine the ownership thereof, although the defendant claimant is a nonresident of the state in which the suit is brought. *pp. 114, 115.*

SAME.—*Jurisdiction.—Executors and Administrators.*—The fact that the executor of an estate in another state inventoried a certain debt as an asset will not oust the jurisdiction of a court in this State to determine the ownership of the debt in a suit brought by the administrator of another estate at the residence of the debtor. *pp. 115, 116.*

EXECUTORS AND ADMINISTRATORS. — *Administrator De Bonis Non.—Omitted Assets.*—When a husband gave all of his property to his wife, for life, and made her executor of his will, and the wife failed to administer upon a part thereof and afterward invested it in building and loan association stock, in her own name, which, at her death was inventoried by her executor as a part of her estate, an administrator *de bonis non* of the deceased husband's estate may recover such stock as an omitted asset of his decedent's estate. *pp. 116–120.*

TRUSTS.—*Husband and Wife.— Land in Wife's Name.*— Where real estate was purchased by a husband and wife jointly, each furnishing a portion of the purchase money, and title was taken in the name of the wife, for the declared purpose, by the wife, to avoid guardianship, the husband being of unsound mind, equity will enforce a trust in the funds so invested in favor of the persons beneficially interested, independently of any imputation of fraud. *pp. 120–122.*

EXECUTORS AND ADMINISTRATORS.—*Heirs as Witnesses.—Competency.*— In an action by an administrator *de bonis non* against the executor of the former executor to recover property in the possession of defendant, alleged to belong to plaintiff's estate and not administered upon by the deceased executor, the legatees of plaintiff's decedent are not rendered incompetent by statute, §§506, 507 Burns 1901, to testify as witnesses. *pp. 122–124.*

From Whitley Circuit Court; *J. W. Adair,* Judge.

Action by William J. H. Probasco, administrator *de bonis non* of the estate of Aaron C. Probasco, deceased,

against the Michigan Trust Company, executor of the will of Lucina Probasco, deceased, and others, for the recovery of property in possession of defendant alleged to belong to plaintiff's estate and which defendant's decedent as former executor had failed to administer upon. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*R. C. Bell, N. D. Doughman, O. N. Heaton* and *Walter Olds*, for appellant.

*W. G. Colerick* and *G. Colerick*, for appellee.

Robinson, P. J.—Suit by appellee against the Tri-State Building and Loan Association and appellant, a foreign corporation, to determine the title to a certificate of building and loan stock. The complaint avers that Aaron C. Probasco died on the 13th day of April, 1890, testate, and that his will was probated three days thereafter. He bequeathed to his wife, Lucina Probasco, the furniture and other items of personal property in his residence, known as No. 30 Douglass avenue, in the city of Fort Wayne, and the sum of $1,000 cash. He also gave her the income during her life of all the residue of his property, both real and personal, and after her death he directed that all this property should go to his five children. Lucina Probasco qualified as executrix, and filed what purported to be a complete inventory of all the personal estate of the decedent, and afterwards filed her final settlement report, which was approved. In March, 1898, Lucina Probasco died in the state of Michigan, where she resided, testate, and by an inventory of the supposed assets of her estate it appears that at the time of her death she held and was in possession of personal property of the value of $6,000, being the proceeds of property which was owned by Aaron C. Probasco at the time of his death, and which she had at divers times both before and after his death appropriated to her own use, and had converted into other kinds of property, and which, as executrix, she failed to embrace in the in-

ventory and appraisement of his estate, and that the same was never administered upon nor accounted for by her as such executrix. A part of the proceeds of this property is a certificate of stock of the Tri-State Building and Loan Association of the value of $4,000, which was issued to her, and which was in her possession at the time of her death, and is now in the possession of appellant, as executor of her will, which executor claims such certificate as a part of the assets of her estate. In March, 1898, appellee was appointed administrator *de bonis non* of the estate of Aaron C. Probasco, and qualified as such, and filed an inventory and appraisement of certain assets, including the certificate of stock above set forth. The appellee asks the court to adjudge that the certificate constitutes a part of the estate of his decedent, and that appellant has no interest therein, and that the loan association be enjoined from paying the certificate to the appellant, and that appellant as such executor be enjoined from collecting the same, and that a receiver be appointed to take possession of the same during the pendency of the action.

Prior to the act approved March 5, 1891, the approval of the final settlement and account of an administrator was an adjudication of whether the administrator had turned into the estate all the personal estate belonging to it, and all claims of every nature due to it; and such adjudication became final and conclusive unless appealed from or assailed for mistake or fraud within three years after the final settlement. The above act, §2395 Burns 1901, provides that, when it shall be shown to the court that an administrator or executor has been finally discharged, and that there is no administration pending in this State, and that there are assets of the estate within the jurisdiction of this State that have not been, but should be, administered, then, upon application of any creditor, legatee, or distributee, the court may appoint an administrator *de bonis non,* who has the duties and powers of an executor or administrator.

It is clear the legislature intended a change from the former rule, so that an estate might have the benefit of assets omitted in the former administration, although there had been a previous final settlement. The former settlement stands, and, without setting it aside, the estate may be opened up for the purpose of administering such omitted assets. The former settlement continues to be a final adjudication as to all matters except these omitted and unadministered assets. "By the passage of this act," said the court in *Barnett* v. *Vanmeter,* 7 Ind. App. 45, "it was doubtless intended to reach any assets, for the benefit of creditors, legatees, or heirs which had not been administered upon in the former administration." *Wahl* v. *Schierling,* 11 Ind. App. 696. In appointing appellee administrator *de bonis non* the court determined that no administration was pending in this State, and that there were in this State unadministered assets of the estate which had not been, but which should be, administered. When appointed, he was given the same power and charged with the same duties as a general administrator. Every presumption is in favor of the vaildity of the appointment, and it can not be attacked collaterally. In a suit by such administrator he need only aver that he is administrator, and his right to sue can not be questioned except by plea in abatement denying the right. *Barnett* v. *Vanmeter, supra; Nolte* v. *Libbert,* 34 Ind. 163; *Kelley* v. *Love,* 35 Ind. 106; *McDowell* v. *North,* 24 Ind. App. 435; §§2446, 2447 Burns 1901.

This is not a suit for the conversion, by the executrix, of funds belonging to the estate of Aaron C. Probasco. The claim here sued for never came into the possession of Lucina Probasco as executrix of the will of her decedent. Such a suit could be maintained by appellee, as administrator *de bonis non* of the estate of Aaron C. Probasco, upon the bond of Lucina Probasco as executrix. §2613 Burns 1894; *Lucas* v. *Donaldson,* 117 Ind. 139; *Ormes' Estate* v. *Brown,* 22 Ind. App. 569.

The complaint must proceed upon the theory that Lucina Probasco, as the wife, and afterwards as the widow, of Aaron C. Probasco, appropriated to her own use property belonging to him, and that at her death she still had this property. It goes upon the theory, not that she did any wrong as executrix, but that during her lifetime and at her death she held property belonging to the estate of her husband, which property consists of a certificate of building and loan stock issued by an Indiana corporation in the county where suit was brought. The complaint seeks a personal judgment against no one, but asks primarily to have the title to this stock determined. The certificate evidencing the obligation of the association is in another jurisdiction, but the subject-matter of the action is the indebtedness of the association on the stock. The certificate of stock is no more than evidence of the debt of the association, and the situs of this debt is, not the place where this evidence of the debt happens to be held, but the residence of the debtor. "The general rule of law is well settled," said the court in *Wyman* v. *Halstead,* 109 U. S. 654, 3 Sup. Ct. 417, 27 L. Ed. 1068, "that for the purpose of founding administration all simple contract debts are assets at the domicil of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and, therefore, the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable." See *Von Hess·* v. *Morton,* 5 N. Y. Supp. 790; *Catlin* v. *Wilcox, etc., Co.,* 123 Ind. 477, 8 L. R. A. 62, 18 Am. St. 338; *Owen* v. *Miller,* 10 Ohio St. 136, 75 Am. Dec. 502.

It is argued that the court had no jurisdiction over appellant nor over the subject-matter. Jurisdiction is the authority to hear and determine a cause. Appellant was served with summons at its place of business in Grand Rapids, Michigan. The suit is primarily against the Tri-State Build-

ing and Loan Association.   But the complaint does not seek a personal judgment against any one.   It asks the court to determine title to the building and loan stock.   The complaint does not show appellee entitled to a judgment for the amount of the stock, even if the title to the stock is declared to be in the estate represented by appellee.   It does ask that the association be prevented from paying the stock to any person other than appellee, but no money judgment is asked against the association.   The cause of action arose where the association is located.   It is to determine the ownership of a debt at the residence of the debtor.   The jurisdiction of the court over the debtor and the cause of action was complete.   The pleading asks for a judgment *in rem.*   It may ask for more than the court had power to grant, but that does not necessarily make the complaint bad.   Although appellant was a nonresident, the service of the summons, equivalent to publication, gave the court jurisdiction of the person so far as necessary to determine the rights of the litigants in this particular property which was within the jurisdiction of the court.   *Hellebush* v. *Blake,* 119 Ind. 349; *Quarl* v. *Abbett,* 102 Ind. 233, 52 Am. Rep. 662.   See §§320, 321 Burns 1901.

It is true, a foreign corporation has inventoried this asset. But the complaint does not show that this same matter is in litigation in another state.   It does show the certificate of stock is in the possession of an executor appointed by a court in another state.   But this is not a controversy between an administrator or executor appointed in one state and an administrator or executor of the same estate appointed in another state.   The question here is not which of two administrators of one estate, but appointed in different jurisditions, shall administer a particular asset (*McCord* v. *Thompson,* 92 Ind. 565), but the question is, which of two different estates owns a certain asset.   This asset consists of a debt owing by an Indiana debtor.   It is clear, we think, that the fact that a foreign executor of one estate has in-

ventoried this property as an asset of that estate can not oust the jurisdiction of the Indiana court in a suit by an Indiana administrator of another estate brought at the residence of the debtor to determine the ownership of the particular debt.

The special finding of facts shows: Aaron C. Probasco died testate at Allen county, April 13, 1890, leaving surviving his widow, Lucina Probasco, and five children. The will, duly probated, gave the widow all the personal property in the dwelling house, except moneys, rights, choses in action, and other evidences of indebtedness, and gave to her $1,000 in cash, and the use and income during her life of all the residue of his real and personal property, including money on hand or in bank, and rights and choses in action; and after her death to his five children. The widow qualified as executrix, and afterwards filed her final settlement report, which was approved. Afterwards the five children filed a petition to set aside this settlement, claiming that in April, 1889, the widow received of the decedent $3,137.62 in money and a note executed to decedent by one Coombs for $5,000, to be held by her in trust; that the note was paid to her; and that as such trustee she continued to hold all this property after his death; and that the same had not been accounted for by her. In February, 1892, the widow and five children entered into a written agreement whereby a settlement was had as to the $3,137.62 in money and the $5,000 note, and by way of settlement it was agreed that she should surrender to John H. Bass, selected as trustee, two certificates of stock issued by the Tri-State Building and Loan Association to her, one for $2,000 and the other for $400, which she had purchased out of the money, and a note for $5,000, which had been executed to her by John H. Bass in lieu of the $5,000 note executed to decedent by Coombs; and by this agreement Bass was to account for and pay to her the interest on such shares of stock and note for and during her life, and on her death he was to vest the title

to this stock and the note in the five children, and Bass took possession of the stock and note, and the petition to set aside the settlement was withdrawn. By the provisions in that agreement the widow conceded the fact that she was holding the money and the note in trust for the decedent, and that the same, under his will, rightfully belonged to the children, subject to her life interest, which property was the only property embraced in that settlement. Lucina Probasco died testate, at Kent county, Michigan, in 1898, and the Michigan Trust Company qualified as executor, and filed an inventory of what purported to be her personal property. In that inventory was included the building and loan stock here in controversy. On March 28, 1898, the appellee was, upon his application, appointed administrator *de bonis non* of the estate of Aaron C. Probasco, and afterwards instituted this action to determine the title to such certificate, and for the appointment of a receiver until the action could be finally heard and determined.

Aaron C. Probasco and Lucina Probasco were married in 1876. After their marriage they agreed to purchase a lot in the city of Fort Wayne and construct thereon a residence, and in accordance with their agreement she furnished $2,775 and the husband the balance; the house costing $4,000 and the lot $1,750. Under that agreement each was to hold an interest in the real estate equal to the amount invested. After the husband's death she sold the real estate for $6,500, and received the purchase money, and appropriated the same to her own use, and never accounted for the interest of Aaron C. Probasco in the same, or any part thereof, to his children, and invested the same in the purchase of stocks, bonds, and other property, and put the title thereto in her own name. At the time of their marriage Aaron C. Probasco owned personal property including notes, money on deposit, stocks, bonds of great value, amounting to many thousands of dollars, the exact amount of which is not stated. The mind of Aaron C. Probasco having be-

come impaired, Lucina Probasco took the title to the residence lot in her own name, and from time to time assumed and took possession of large sums of money belonging to him, including the $3,137.62 cash and the $5,000 note above mentioned, and loaned the same and took notes therefor in her own name; and after the death of her husband she changed, from time to time, the investments of money which belonged to him, as well as the money she had received on the sale of the dwelling, and with such money she purchased certificates of stock issued by the Tri-State Building and Loan Association, amounting in the aggregate to $6,400, and which stock, excepting $2,400 thereof, she never in any manner accounted for to the court nor to his children. She also purchased other stock, and deposited some of the money in the bank, and in explanation of her conduct she stated from time to time to his children that her purpose in so doing was that she might use the same for his benefit without having a guardian appointed to take possession thereof, and in that way he could and would have the benefit of the money, and that she was holding it in that way for him. In 1895 she deposited with the Hamilton National Bank the certificate of stock of the Tri-State Building and Loan Association for $4,000 here in question, and certain other notes, and a bond for $1,000, and advised the president of the bank that the same were the property of such children, and that she was only entitled to receive the interest on such obligations, and the principal of such as might be paid while the same were in his possession, and that he should remit to her out of the interest he might so collect such sums as she might need; and he did during her absence receive interest on such certificates, notes, and bonds, and on her return she received from the bank the money, interest, and bonds, and the certificate of building and loan stock, and held the possession of the same until her death; that the same are now in the possession of the executor of her estate, although they are the property of the estate of Aaron C.

Probasco, and should be surrendered to the appellee, administrator *de bonis non* of his estate. It is further found that the title to and right of possession of the certificate of building and loan stock for $4,000, together with certain other evidences of debts, were not involved in the settlement that was made by Lucina Probasco with the children, on the 2d day of February, 1892.

As a conclusion of law the court stated that appellee is the owner and entitled to the possession of the certificate of stock of the building and loan association for $4,000, with interest thereon from October 1, 1897, and that the same is an unadministered asset belonging to the estate, and that appellant is not entitled to the possession of the same, and has no right, title, nor interest therein.

The findings, as set forth in the record, contain much matter of evidence, and, as above set forth, they state evidence, in some instances, instead of facts. But, eliminating all matters of evidence, it is found that the wife and widow appropriated to her own use money and property belonging to her husband and to his estate, which she had never accounted for, and that the certificate of stock here in question is the property of the estate of Aaron C. Probasco. The evidence is not clear as to the amount of his money she invested in her own name. But when taken in connection with her admissions, made at different times, with reference to his personal property, and especially her admissions as to the particular stock here in controversy, the trial court might properly conclude, as it did, that the stock was purchased with money belonging to his estate. The cash item of $3,137.62 and the $5,000 note had been accounted for; but it is found that she obtained possession of other sums also, although the amount is not stated, and also the husband's portion of the proceeds of the sale of the residence property, and out of such sums purchased the stock in controversy.

It is true it is shown that the particular stock was not in existence at the time of the death of Aaron C. Probasco. But neither the complaint nor the findings proceed upon the theory that the widow, as executrix, converted any money to her own use. Under his will she was entitled to the use and income from all his property, real and personal, during her life. She was named as executrix in the will. She might reinvest his money after his death, if such action was necessary in order to have it produce an income. But it was still property belonging to his estate, although she may have changed the investment. We fail to see how the fact that this stock, having no existence at the husband's death, and could not therefore be an unadministered asset, can aid appellant. If it is shown that she had money of his which was never administered, and that this money was put into the stock in her own name, the estate was, in equity, the owner of the stock. It may be true that a claim for so much money might have been presented against her estate, but that did not preclude his estate from recovering the stock, if it is shown that the stock was actually purchased with money belonging to his estate.

It is argued that the trust in certain real estate, which the court attempted to find, was void under our statute. It appears that the residence lot was purchased and a dwelling erected thereon, the husband and wife each contributing a portion of the cost, and that the title to the lot was taken in the wife's name. There was evidence to show that at this time the husband's mind had become impaired, and declarations of the wife were shown in which she had stated that at the time the deed was made the husband was of unsound mind, and that the conveyance was taken in her name to avoid guardianship. It is quite true that where real estate is taken in the wife's name, and the husband pays the purchase price, no resulting or implied trust arises in his favor, and that a parol agreement between them that she shall hold the land as his trustee does not create an

express trust. *Montgomery* v. *Craig,* 128 Ind. 48. But where the legal title is taken in the name of the wife under the circumstances here disclosed, it would certainly not be in accord with equitable principles to deny the enforcement of a constructive trust in favor of the husband or his representatives. Such a trust is created not by any agreement, but by operation of law. If the wife intended to take advantage of the husband's weakness at the time the deed was made, equity impresses a trust on the property, or the money derived from its sale. "In general," says the author in 2 Pomeroy's Eq. Jurisp. (2d ed.), §1053, "whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer." See *Moore* v. *Crawford,* 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878.

But suppose it be admitted that there was no intention on the wife's part to take advantage of her husband's mental condition, still the record shows that when she obtained the property which was afterwards put into this stock she was

voluntarily acting in a fiduciary capacity. In such case equity impresses a trust upon the funds thus obtained by her, which follows the property into whatsoever form it may be changed, so long as it remains in the hands of the fiduciary, and in the hands of others, except a *bona fide* purchaser for value and without notice. Equity regards such a purchase or investment as made in trust for the person beneficially interested, independently of any imputation of fraud. 2 Pomeroy's Eq. Jurisp. (2d. ed.), §1049 *et seq.* The evidence in such cases, it is true, must be clear and unmistakable. But in this case, as we have said, when all the facts and circumstances proved are taken in connection with the admissions of the wife, made at different times, the evidence is sufficiently clear to authorize the court's conclusion.

The legatees named in the will of Aaron C. Probasco were permitted, over appellant's objection, to testify as witnesses. We can not here inquire into the reasons presented when the appointment of the administrator *de bonis non* was made. It may be true that there are no unpaid creditors of the estate, and that the purpose of the suit is to obtain possession of the stock in question for the legatees. But an administrator once appointed clearly has the right to bring suit to recover any property which may be properly administered as assets of the estate.

Section 506 Burns 1901 provides that: "In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate: Provided, however, that in cases where a deposition of such decedent has been taken," etc. The above section is one of the exceptions to the statutory rule

that all persons, whether parties to or interested in the suit, are competent witnesses in a civil action. §504 Burns 1901. Unless the particular case is shown to be within some statutory exception, the person offered as a witness is competent. It is clear from the language used in §506 that the legislature had in view suits where one of the parties only was an executor or administrator, and the matters involved occurred during the lifetime of the decedent whom the particular executor or administrator represents.　The object of this legislation "was to prohibit a party litigant from testifying in his own behalf, when the other party to the transaction is dead, and, therefore, not available as a witness." See *Upton* v. *Adams,* 27 Ind. 432.　Under this section two facts must coexist to render the witness incompetent:　He must ·be a necessary party to the issue or record, and his interest must be adverse to the estate.　*Walker* v. *Steele,* 121 Ind. 436.　There is nothing in the language used to authorize us to say that the legislature also had in view suits where both parties are executors or administrators.　Considering, as we are, an exception to a general rule, we are not authorized to say that when the legislature made a single exception it intended by that enactment to make two exceptions.　The section makes incompetent as a witness any person who is a necessary party to the issue or record whose interest is adverse to. such estate.　In a suit by an administrator to collect assets belonging to the estate, the legatees or distributees are not necessary parties to the issue or the record.　It is true a legatee may have an interest in the result of the suit, and that interest may be adverse to such estate, but that does not make him a necessary party to the issue.　The same reasoning that would make him a necessary party would make each creditor of the estate a necessary party to the issue, and incompetent as a witness.　Parties to the issue must mean the parties between whom there is a controversy submitted to the court for trial; the parties who are litigating the particular con-

troversy, and against one of whom, and in favor of the other, the court will render a judgment or decree. It can not be said that because a person has an interest in the result of the suit he is a party to the issue. As we construe §506 Burns 1901, the witnesses were not incompetent under that section. See *Spencer* v. *Robbins,* 106 Ind. 580; *Starret* v. *Burkhalter,* 86 Ind. 439; *Sloan* v. *Sloan,* 21 Ind. App. 315; *Scherer* v. *Ingerman,* 110 Ind. 428; *Sullivan* v. *Sullivan,* 6 Ind. App. 65; *Bischof* v. *Mikels,* 147 Ind. 115. These witnesses were not incompetent because of §507 Burns 1901, for the reason that this is not a suit between heirs, nor a suit by or against heirs founded on a demand against the ancestor.

Judgment affirmed.