CRAIG ET AL. *v.* NORWOOD, ADMINISTRATOR.

[No. 8,589. Filed March 3, 1915. Rehearing denied June 25, 1915. Transfer denied February 17, 1916.]

1. COSTS.—*Stay of Subsequent Action Until Payment.*—The rule that while the costs of a dismissed action remain unpaid the commencement of a subsequent action for the same thing will be deemed vexatious, and will be stayed on proper application until the costs of the former action have been paid, does not apply where plaintiff shows affirmatively that the subsequent action is brought in good faith. p. 108.

2. APPEAL.—*Judgments Appealable.—Order on Application to Stay Proceedings.*—The ruling of the trial court on an application to stay proceedings for nonpayment of the costs of a former suit is not a final judgment from which an appeal may be taken. p. 108.

3. COSTS.—*Stay of Subsequent Action Until Payment.—Discretion of Court.*—An application to stay proceedings for nonpayment of the costs in a former suit is addressed to the sound discretion of the trial court, and its action will be reviewed when an abuse of such discretion appears. p. 109.

4. COSTS.—*Stay of Subsequent Action Until Payment.—Discretion of Court.*—In view of the constitutional provisions that the courts shall be open to every man and that justice shall be administered freely, a party may bring and prosecute his action to final judgment regardless of the number of actions he has previously brought for the same cause of action, unless it appears that he is simply bringing such actions to harass and annoy, or that they are vexatious and without merit, and therefore an abuse of the court's discretion in refusing to stay proceedings until payment of costs is not conclusively shown merely by the fact that plaintiff had brought two prior actions for the same thing in which the costs were unpaid. p. 109.

5. Costs.—*Stay of Subsequent Action Until Payment.*—The exercise of authority to stay proceedings for nonpayment of the costs of a prior suit should be governed by the facts and circumstances of each case, and a stay should never be granted unless it appears to the court that the subsequent suit is without merit and vexatious. p. 109.

6. Appeal.—*Review.—Stay of Proceedings.*—The court on appeal indulges the presumption that the trial court's action in refusing to stay proceedings until payment of the costs of prior suits was proper, and will not reverse the judgment on the ground that such action was an abuse of discretion unless such an abuse is clearly and unequivocally shown. p. 110.

7. Appeal.—*Issues of Fact.—Conflicting Affidavits.—Conclusiveness of Finding.*—An issue of fact determined by the trial court on conflicting affidavits is conclusive on appeal. p. 110.

8. Executors and Administrators.—*Necessity of Administration.*—On the death of an intestate leaving no widow and having no debts, and there is nothing to be done by way of administration of the estate except to divide it among the heirs at law, such heirs may settle the estate without an administrator, and they may resist the appointment of one or procure the removal of one who has been appointed. p. 111.

9. Descent and Distribution.—*Rights of Heirs to Settle Estate.—Action by Heirs.*—Where an intestate dies under circumstances making administration on his estate unnecessary, and none is had, the heirs at law may sue in their individual names to recover a demand due decedent in his lifetime, but they must allege and prove that there is no administration pending, since so long as there is an administrator he is entitled to recover all debts due the estate. p. 111.

10. Executors and Administrators.—*Right to Sue.*—The right of an administrator to sue can be questioned only by a plea in abatement. p. 111.

11. Executors and Administrators.—*Powers of Administrators.—Right to Sue.*—Administrators possess the same rights and powers with respect to the personal estate as the decedent had in his lifetime, and they can maintain actions for trespass or injuries committed either before or after the decedent's death, and have full authority to prosecute any suit which he might have prosecuted in his lifetime, and they alone are authorized to bring an action for the conversion of personal property owned by the decedent at the time of his death; hence an action charging defendants with conspiring to fraudulently procure the money and property of a decedent and with having fraudulently converted the same to their own use, was properly brought by the administrator. p. 112.

12. Executors and Administrators.—*Recovery of Property.—Complaint.—Sufficiency.*—A complaint by an administrator for the recovery of the property of his intestate, alleging that the intestate

was enfeebled in body and mind by age, that defendants knowing his infirmity conspired to obtain fraudulently for themselves all his property, that they induced him to sell his real estate, and that they converted notes and bank accounts aggregating a specified sum, out of which they distributed a portion to certain heirs and converted the balance to their own use, etc., stated a cause of action. p. 112.

13. PLEADING.—*Answer.*—*Sufficiency.*—A paragraph of answer to be good as against demurrer for want of facts must fully answer the complaint or so much of it as it purports to answer. p. 114.

14. CONSPIRACY.—*Civil Liability.*—*Evidence.*—In a civil action charging conspiracy positive evidence of a conspiracy is not essential, but the evidence will sustain the charge if when considered in its entirety it furnishes reasonable grounds to infer the essential facts. p. 114.

15. WITNESSES.—*Competency.*—*Transactions With Deceased Person.*—*"Party."*—Under §§519, 521 Burns 1914, §§496, 498 R. S. 1881, relating to the competency of witnesses, and providing that, where an administrator is a party to an action involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be rendered for or against the estate, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a witness as to such matters against such estate, the word "party" means a party to the issue and not merely a party to the record, and to be incompetent as a witness such party must have an interest adverse to the estate; so that in the absence of any showing that persons, though nominally parties, are necessary parties to the issue or record in an administrator's action, or that they have any interest adverse to the estate, it is error to refuse to permit them to testify. p. 115.

16. WITNESSES.—*Competency.*—*Transactions with Deceased Persons.*—*Waiver.*—Where an administrator suing to recover property belonging to the estate, obtained by defendants through a conspiracy and converted by them, called, on the trial of a prior action for the same cause, a party as a witness and compelled him to testify, and also required him to answer written interrogatories, he waived the incompetency of the party to testify in the subsequent action under §526 Burns 1914, §502 R. S. 1881. p. 116.

From Hendricks Circuit Court; *James L. Clark,* Special Judge.

Action by James A. Norwood, administrator *de bonis non* of the estate of Joseph Peggs, deceased, against James A. Craig and others. From a judgment for plaintiff, certain defendants appeal. *Reversed.*

*Charles A. Dryer* and *Thad. S. Adams*, for appellants.

*Charles F. Remy* and *James M. Berryhill*, for appellee.

IBACH J.—Appellee brought this action against a large number of defendants, all of whom were discharged from all liability by the instructions of the court except Mary A. Myers, James A. Craig and Oliver L. Means, as executors of the last will and testament of Margaret F. McGregor, deceased, who were substituted as defendants in her stead upon her death, and James A. Craig, to whom Joseph Peggs executed a power of attorney for the transaction of his business about March 8, 1905. Two suits were previously brought, one by a former administrator, and were dismissed or otherwise disposed of before proceeding to judgment. The complaint in the present action originally embraced several paragraphs, which were disposed of by demurrer, or dismissed, except the fifth and sixth. These paragraphs, together with the supplemental complaint substituting the executors of the will of Margaret McGregor, after her death, formed the complaint upon which the cause proceeded to final judgment.

The fifth paragraph of complaint charges that defendants Mary A. Myers, Margaret McGregor, and James A. Craig entered into a conspiracy to wrongfully and fraudulently procure for themselves, their children, and other named parties defendant, all the money and property of Joseph Peggs, and in furtherance of that conspiracy procured the appointment of Craig as attorney in fact for Peggs to transact all of his business, and fraudulently converted it to their own use. The sixth paragraph alleges in substance all that is contained in the fifth with the additional charge that Joseph Peggs was at the

time and for two years prior thereto a person of unsound mind, and was so well known to. be.

Appellants filed a verified motion to stay proceedings until the costs of the two preceding actions between the same parties and for the same cause had been paid. The overruling of this motion presents the first alleged error. Appellants then filed separate and several demurrers to each paragraph of complaint, which were also overruled, and exceptions saved. The answer was in three paragraphs, the first a general denial, and the second and third, which set up affirmative matter, were held insufficient on demurrer. The cause was tried by jury, and a verdict was returned in favor of appellee for $4,500. Appellee over the objection of appellants remitted $600 and over a motion for new trial, judgment was entered for $3,900 on the verdict. Each of the aforesaid rulings is assigned as error by the appellants in this court. We will proceed to consider them in their proper order.

As a general rule, while the costs of a dismissed action remain unpaid, the commencement of a subsequent suit for the same subject-matter will be presumed to be vexatious, and will as a general rule be stayed by the court, upon proper application, until the costs occasioned by the former suit are paid. An exception to this general rule arises, however, where the plaintiff shows affirmatively that the subsequent suit is not vexatious, but is excusable, and is brought in good faith. *Wait* v. *Westfall* (1904), 161 Ind. 648, 651, 68 N. E. 271, and authorities there cited. The rulings of the trial court on an application to stay proceedings for the nonpayment of the costs of a former suit, do not constitute a final judgment from which an appeal may be taken; on the contrary, such an application is addressed

to the sound discretion of the trial court, and its action is subject to review by this court when an abuse of that discretion appears. *Trogdon* v. *Brinegar* (1901), 26 Ind. App. 441, 59 N. E. 1066, and cases cited. Appellant contends that a second action between the same parties for the same cause, without paying costs of the former suit is presumably vexatious, and that the bringing of the same suit for a third time would be conclusively vexatious, and that the question under such circumstances would not be one in which the discretion of the trial court was to be exercised, but that such third suit would of necessity abate. We know of no authority on which such a claim could properly rest. The number of times a party has sought to litigate a cause in court will not of itself determine conclusively his rights. The Bill of Rights in our State Constitution guarantees that the courts shall be open to every man for injury done him and he shall have remedy by due course of law; "justice shall be administered freely and without purchase, completely and without denial; speedily and without delay." Under the provisions of our organic law a party has the right to bring and prosecute his action to final judgment regardless of the number of suits he has previously brought, unless it appears that he is simply bringing such actions to harass and annoy, or that they are vexatious and without merit. It seems to us that when such applications are presented to the trial court, the question is not simply the number of times a suit has been brought, or whether the parties are at all times the same, but whether the action has in fact been brought in good faith, or whether it is vexatious and without merit. No fixed rule can be established to govern in all cases, but rather the facts and circumstances of each

particular case must govern, but in no case should an application to stay proceedings be granted unless it appears to the court, in the light of all the surrounding circumstances, that the subsequent suit is without merit and vexatious. *Eigenmann* v. *Eastin* (1897), 17 Ind. App. 580, 45 N. E. 795, and cases cited.

The presumption is that the trial court in refusing appellants' application in the case was not influenced or actuated by any improper

6. motive, and did no wrong, so that before this court will reverse a judgment of the trial court on account of an abuse of legal discretion, it must appear clearly and unequivocally that such court has abused its discretionary powers. Elliott, App. Proc. §604; *Mead* v. *Burk* (1901), 156 Ind. 577, 60 N. E. 338. It will also be observed that the first suit was brought by a former administrator and the second by the present administrator, in their representative capacities, and the statute authorizing them so to do specially exempted them from personal liability for costs. §2808 Burns 1914, §2291 R. S. 1881. It would unnecessarily prolong this opinion to set out the verified application and the counter affidavits by the parties. It is sufficient to say that there was some evidence on which this ruling of the court can be sustained. An issue

7. of fact determined by the trial court on conflicting affidavits is conclusive on this court. *Conrad* v. *State* (1896), 144 Ind. 290, 295, 43 N. E. 221. There was no error in the ruling of the trial court on this application.

This action was instituted January 25, 1910. The act of 1911 (Acts 1911 p. 415, §344 Burns 1914), cited by appellee, requiring demurrers on the ground of insufficiency of facts to state a cause of action to be accompanied by a memorandum, showing in what

respects the pleading is insufficient, does not apply, because it is expressly provided in that act that it shall not apply to litigation pending at the time the act took effect.

There can be no doubt, when a person dies intestate, without leaving a widow and there is no indebtedness and there is nothing to be done by way of administration of the estate but the division of it among the heirs, that such heirs at law may settle the estate without an administrator and they may resist the appointment of one, or may bring suit to set aside the appointment, if one is made, and thereby remove him. *Block* v. *Butt* (1908), 41 Ind. App. 487, 84 N. E. 357. Also, the heirs, under such circumstances, and where there is no administrator have the right to sue in their individual names to recover a demand due decedent in his lifetime. This, however, is the exception to the general rule. *Brunson* v. *Henry* (1894), 140 Ind. 455, 39 N. E. 256; *Buchanan* v. *Buchanan* (1909), 22 L. R. A. (N. S.) 454, and extended note. It is necessary in such cases to allege and prove that there is no administration pending and no administrator. *Magel* v. *Milligan* (1898), 150 Ind. 582, 50 N. E. 564, 65 Am. St. 382. So long as there is an administrator he is entitled to recover all debts due the estate, the claims of creditors being superior to the rights of heirs. *Hall* v. *Brownlee* (1902), 28 Ind. App. 178, 62 N. E. 457. The right of an administrator to sue can only be questioned by a plea in abatement. *Michigan Trust Co.* v. *Probasco* (1902), 29 Ind. App. 109, 63 N. E. 255; *Hansford* v. *Van Auken* (1881), 79 Ind. 157; *McDowell* v. *North* (1900), 24 Ind. App. 435, 55 N. E. 789; §2810 Burns 1914, §2292 R. S. 1881. The statute gives an

administrator full power to maintain any suit in any court of competent jurisdiction in his name as administrator "for any demand of whatever nature due the decedent in his lifetime." §2808 Burns 1914, *supra*. Administrators possess the same rights and powers with respect to the personal estate as the decedent in his lifetime. They can maintain actions for trespass or injuries committed either before or after the decedent's death, and have full authority to prosecute any suit which the ancestor could have prosecuted in his lifetime. *Smith* v. *Dodds* (1871), 35 Ind. 452. In this State an executor or administrator alone can bring an action for conversion of personal property owned by the decedent at the time of his death. *Humphrey* v. *Davis* (1885), 100 Ind. 369, 371; *Douglass* v. *McCarer* (1881), 80 Ind. 91. The administrator was the proper party to bring this suit.

The material averments of the fifth paragraph of the complaint are that Joseph Peggs died November 16, 1905, aged ninety-eight. For some years prior to his death he was almost blind, and was enfeebled both in body and mind, had become very childish, and was easily influenced by those who associated with him much of the time, especially by those with whom he sustained confidential relations. In November, 1904, he was the owner of fifty-eight acres of land, some notes aggregating in amount $2,000 and about $2,000 on deposit in bank. About that time James A. Craig, Margaret McGregor and Mary A. Myers, knowing his infirm and feeble condition, conspired together to wrongfully and fraudulently obtain for themselves all such property, and in furtherance of that plan they took him from his established home and kept him in their own homes, surrounded only by their own families and special friends. Some three

or four months thereafter they induced him to sell his land for about $6,000 and Craig was appointed his attorney in fact to transact all his business for him and he continued so to act until the time of the death of decedent. After such appointment in furtherance of their fraudulent design, Craig converted all of the property of said Peggs into cash, amounting in all to $9,000. Of this sum $2,500 was distributed among certain heirs and relatives of decedent during his lifetime, and the balance in the consummation of their fraudulent scheme was converted and appropriated to their own use. They have ever since wrongfully retained said sum of money and have refused to surrender the same to appellee, although demanded so to do.

The averments of the sixth paragraph are in most respects the same, except it contains the additional averment that Joseph Peggs was of unsound mind for two years prior to his death and during all the time the conspiracy was being carried out, and appellants knew of his infirmity and with that knowledge conspired to and did reduce all his property to cash and converted it to their own use.

Appellants insist the complaint is bad because no value is alleged to the notes and bank account. Conversion of the notes and bank account is not charged; it is the proceeds thereof, and it is alleged that the notes aggregated the sum of $2,000, and the bank deposits $2,000. The fifth paragraph charges that in furtherance of the conspiracy Craig wrongfully and fraudulently converted the remaining $7,500 from the estate to his own use and benefit, and to the use and benefit of his codefendants, also that Mrs. McGregor and Mrs. Myers engaged in the conspiracy by which the fraud was committed. Each paragraph of the complaint is sufficient. *Harlan v. Brown* (1892), 4 Ind. App. 319, 30 N. E. 928;

*Breedlove* v. *Bundy* (1884), 96 Ind. 319; *Louisville, etc., R. Co.* v. *Balch* (1886), 105 Ind. 93, 4 N. E. 288.

There was no error in refusing to strike out part of the sixth paragraph of complaint. *Lewis* v. *Godman* (1891), 129 Ind. 359, 27 N. E. 563; *Lake Erie, etc., R. Co.* v. *Juday* (1898), 19 Ind. App. 436, 49 N. E. 843. Neither was there error in sustaining the separate and several demurrers to the separate paragraphs of answer as such answers 13. did not contain facts which constituted a defense to either paragraph of the complaint. A paragraph of answer to be good as against demurrer for want of facts must fully answer the complaint or so much of it as it purports to answer. *Raley* v. *Evansville Gas, etc., Co.* (1910), 45 Ind. App. 649, 90 N. E. 783, 91 N. E. 571; *McKnight* v. *Kingsley* (1911), 48 Ind. App. 372, 92 N. E. 743; *Wilson* v. *Fahnestock* (1909), 44 Ind. App. 35, 86 N. E. 1037.

In view of the disposition which we are required to make of this appeal, it is not necessary for us to consider the assignment that the verdict of 14. the jury is not sustained by sufficient evidence. In this connection it is proper to state, however, that it is not necessary that there should be positive evidence of a conspiracy. It is sufficient if the circumstances show that the defendants engaged in the joint undertaking or purpose to commit a wrong. In other words, in civil cases, the evidence will be held to be sufficient if, when considered in its entirety, it will furnish reasonable grounds for inferring facts essential to a recovery. While not required to do so, we nevertheless have read the evidence, and are impressed with its lack of probative force in many respects, particularly with reference to the mental condition of Joseph Peggs during the last two years of his life,

and consequently at the particular time when it is insisted that the improper influence of appellants so controlled him as to make the disposition which was made of his property not his act, but their own. See discussion of undue influence and unsound mind, in the recent case of *Wiley* v. *Gordon* (1914), 181 Ind. 252, 104 N. E. 501.   There is much evidence to the effect that the disposition of his property was made in conformity to his own instructions, and, under the rule stated in the last mentioned case, it is questionable whether under the evidence it would be a proper inference deducible therefrom that he was at that time of undisposing mind.

It is insisted that the court erred in refusing to allow Ruby Myers and John Myers, who were named as parties defendant to testify in the case and in whose favor the court directed a verdict at the close of the evidence, except as to the mental capacity of the decedent.  Section 519 Burns 1914, §496 R. S. 1881, provides that all persons, whether parties to or interested in the suit, are competent witnesses in a civil action, but among the many exceptions to this rule is the following, "In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate."   §521 Burns 1914, §498 R. S. 1881.  In construing this section of our statute it has been held that "party" means a party to the issue and not merely a party to the record, and that to be incompetent as a witness, such party must have an interest adverse to the estate.  *Spencer* v.

*Robbins* (1886), 106 Ind. 580, 5 N. E. 726; *Owings* v. *Jones* (1898), 151 Ind. 30, 51 N. E. 82. There was absolutely no evidence in the case that the witnesses Myers and Myers were necessary parties to the issue or record or that they had any interest in the controversy which was adverse to the estate, and it is only as to such persons that the statute refers, and makes incompetent to testify. As is said in the case of *Michigan Trust Co.* v. *Probasco, supra,* "Parties to the issue must mean the parties between whom there is a controversy submitted to the court for trial; the parties who are litigating the particular controversy, and against one of whom and in favor of the other, the court will render a judgment or decree. It can not be said that because a person has an interest in the result of the suit he is a party to the issue." So in the case at bar, simply because the witnesses had received $10 from a distribution of funds during the lifetime of decedent would not under the statute make them incompetent to testify generally, and as there was no evidence of any kind to connect them with the alleged wrongful conversion of any property of Joseph Peggs, they were competent witnesses and their evidence should have been permitted to stand. We are wholly unable to concede from the record that the court's ruling can be explained on the theory that the evidence of these witnesses was merely cumulative. So far as we are able to learn, it related principally to the same issue in the case as that testified to by other witnesses, but under different circumstances, at different times and under different conditions.

As to appellant Craig, whose evidence was restricted to evidence of the mental capacity of Joseph Peggs, it appears that he had been called by the plaintiffs and required to testify generally in the first of the two former suits

referred to in this opinion in which he was a defendant between substantially the same parties who remained in this case at the close of the trial, and where the issues were substantially the same. And in the case at bar, when a witness, under the peculiar circumstances of this case, was permitted to relate the testimony of Wm. A. Peggs, a witness in the second of the former suits, who had since died, it was agreed between the parties that the parties to the suit in which Peggs testified, and the issues therein involved were the same as in the present case, and it is very evident from the entire record that for all intents and purposes the parties were the same and the issues the same as in the case in which witness Craig had also testified. The complaint in that case charged a conspiracy by the same persons charged in this case, and charged that they gained their purpose by unduly influencing Joseph Peggs, and that Joseph Peggs was of unsound mind at the time. The record also shows that interrogatories had been presented to Craig during the pendency of the first suit, and he was required to and did answer them, covering the same issues involved in the present suit, and in both instances when he had been asked to do so, he had given in detail the facts and circumstances as he knew them covering all the charges made against him and the two daughters of Joseph Peggs regarding the disposition of his estate during his lifetime. It also appears that he was called as a witness in the first suit by plaintiff, and was compelled to answer the interrogatories under oath presented by the plaintiff, so that his incompetency to testify as to the same matters in this case must be held to have been waived. §526 Burns 1914, Acts 1883 p. 102; *Norvell* v. *Cooper* (1910), 155 Mo. App. 445, 134 S. W. 1095; *Imboden* v. *St. Louis Union Trust Co.* (1905), 111 Mo. App.

220, 86 S. W. 263; *Killian* v. *Heinzerling* (1906), 114 App. Div. 410, 99 N. Y. Supp. 1036; *Bair* v. *Frischkorn* (1892), 151 Pa. St. 466, 25 Atl. 123; *Garrett* v. *Weinberg* (1898), 54 S. C. 127, 137, 138, 31 S. E. 341, 34 S. E. 70; *Young* v. *Montgomery* (1903), 161 Ind. 68, 67 N. E. 684.

Every party to a suit should be permitted to furnish the jury with all the legitimate proof to sustain his contention which is in his power to produce, so that the jury may, upon all the facts surrounding the controversy, reach as nearly as possible a just verdict. We can not say that if the trial court would have permitted the testimony of the three witnesses named to go to the jury on other issues, save the soundness of mind of Joseph Peggs, to be considered by the jury, the result of the trial would have been the same. It was error for the court to exclude it. Other questions have been argued in the briefs, but since the judgment must be reversed for the reasons given, and as it is not likely that they will occur in another trial, it is unnecessary for us to discuss them.

For the errors indicated the judgment is reversed and the cause remanded for new trial.

NOTE.—Reported in 108 N. E. 395. As to the common-law powers of administrators, see 78 Am. St. 171. As to right of legatee or distributee to sue for assets belonging to decedent's estate, see 4 Ann. Cas. 193; 20 Ann. Cas. 95. As to waiver by a personal representative of incompetency of witness to testify to transaction with decedent see Ann. Cas. 1913 A 682. See, also, under (1) 11 Cyc 255-258; (2) 3 C. J. 474; 11 Cyc 257; (3, 5) 11 Cyc 257; (6) 3 Cyc 327; (7) 3 Cyc 377; (8) 18 Cyc 62; (9) 14 Cyc 146, 153; (10) 18 Cyc 996; (11) 18 Cyc 944; (12) 18 Cyc 1016; (13) 31 Cyc 140; (14) 8 Cyc 685.